CITY OF ANN ARBOR v AMERICAN FEDERATION OF STATE,
COUNTY, AND MUNICIPAL EMPLOYEES (AFSCME) LOCAL 369

Docket No. 283814. Submitted March 13, 2009, at Lansing. Decided May
28, 2009, at 9:05 a.m.

The city of Ann Arbor brought an action in the Washtenaw Circuit
Court against American Federation of State, County, and Munici-
pal Employees Local 369, seeking to vacate a portion of an
arbitrator's award that applied a provision of the parties' collective
bargaining agreement beyond the expiration date of the agree-
ment and until the successor agreement was reached. The parties
had agreed by virtue of certain "ground rules" that the agreement
would remain in effect until the successor agreement was reached
but disagreed whether the disputed provision was extended by
that agreement. The arbitrator determined that the provision
remained in effect during the extension. The defendant moved for
summary disposition, alleging that Michigan's period of limita-
tions for an action to vacate an arbitration award is six months and
that the plaintiff's action was not timely. The court, Archie C.
Brown, J., denied the motion, ruling that the residual six-year
period of limitations set forth in MCL 600.5813 applied to the
plaintiff's claim and that even if a six-month limitations period
applied, it would be equitably tolled under the circumstances
presented. The court granted summary disposition in favor of the
plaintiff, concluding that the arbitrator exceeded his authority by
relying on the "ground rules," and not solely on the collective
bargaining agreement, to determine that the contract period
applicable to the disputed provision concluded on the date that the
successor agreement was ratified. The defendant appealed.

The Court of Appeals *held*:

1. The trial court correctly held that an action to vacate an
arbitration award is subject to a six-year period of limitations.
There is no statute or court rule setting forth a limitations period
specifically for actions seeking to vacate labor arbitration awards
arising from collective bargaining agreements. The plaintiff's
action to vacate a portion of the arbitration award is subject either

to the six-year limitations period for contract actions under MCL 423.9d(4) or to the six-year residual catch-all limitations period set forth in MCL 600.5813.

2. The arbitrator did not act beyond the material terms of the collective bargaining agreement from which his authority was derived and did not do anything other than arguably construe or apply the agreement in reaching his conclusions. The factual findings of the arbitrator are not subject to judicial review. There was no basis for the trial court to modify the arbitrator's award. The order granting summary disposition in favor of the plaintiff must be reversed and the case must be remanded to the trial court for entry of an order granting summary disposition in favor of the defendant.

Reversed and remanded.

ARBITRATION — COLLECTIVE BARGAINING — VACATION OF ARBITRATION AWARDS — LIMITATION OF ACTIONS.

Actions seeking to vacate labor arbitration awards arising from collective bargaining agreements are subject to either the six-year limitations period for contract actions under MCL 423.9d(4) or the six-year residual catch-all limitations period set forth in MCL 600.5813.

*Stephen K. Postema* and *Nancy L. Niemela* and *Dykema Gossett PLLC* (by *Melvin J. Muskovitz* and *F. Arthur Jones II*) for the plaintiff.

*Miller Cohen, P.L.C.* (by *Bruce A. Miller* and *Eric I. Frankie*), for the defendant.

Before: BANDSTRA, P.J., and WHITBECK and SHAPIRO, JJ.

BANDSTRA, P.J. Defendant, American Federation of State, County, and Municipal Employees (AFSCME) Local 369, appeals as of right the trial court's order granting summary disposition to plaintiff, city of Ann Arbor, in this action arising from a dispute over the scope of an arbitration award. We reverse and remand for the entry of an order granting summary disposition in favor of defendant.

At issue here is the meaning of language in a so-called "me too" provision of a collective bargaining agreement (CBA) entered into by the parties for the three-year period from July 1, 1998, to June 30, 2001.[1] This "me too" provision provides that

> [i]f another bargaining unit receives an increase higher than the settlement with AFSCME, such increase will also be granted to AFSCME for this contract period as a "me too" on wages. If gained by Police or Fire bargaining units, a "me too" [sic] retroactivity on wages for retirees.

The parties did not reach agreement on a successor contract as of the CBA's June 30, 2001, expiration date. By virtue of "ground rules" mutually agreed to by the parties on April 21, 2001, the CBA was to remain in effect until a successor contract was ratified by both parties. Before the parties reached agreement on a successor contract, defendant filed its grievance, alleging that plaintiff violated the "me too" provision of the CBA by refusing to give defendant's members wage increases provided to members of another bargaining unit.

The parties executed a successor collective bargaining agreement, which was ratified by plaintiff on October 7, 2002. Defendant ratified the agreement sometime between August 21, 2002, and October 7, 2002. Thus, pursuant to the "ground rules," the CBA remained in effect until October 7, 2002.

Defendant's grievance remained unresolved through the process outlined in the CBA, and on March 25, 2002, defendant demanded arbitration. Ultimately, the arbitrator determined that defendant was entitled to the

---

[1] The purpose of this provision was to induce defendant to enter into a contract with plaintiff before bargaining was complete with all other units, without being concerned about whether plaintiff would then grant higher increases to those bargaining units with which it subsequently reached agreement.

"me too" increase it sought, concluding that "the longevity/wage structure increases received by the [other bargaining unit] shall be awarded to AFSCME for the contract period from July 1, 1998, to June 3[0], 2001, and as extended by the parties."

Following the issuance of the arbitrator's opinion, plaintiff granted the "me too" increases to defendant, limited to the period from July 1, 1998, to June 30, 2001. Plaintiff asserted that the arbitration award did not include the period during which the CBA was extended pursuant to the mutually agreed to "ground rules" pending completion of a successor agreement, because that period was not part of the "contract period" within the meaning of the CBA's "me too" provision. Plaintiff argued that the phrase "and as extended by the parties" in the arbitration award meant only that the awarded "me too" increases would continue if, but only if, the parties agreed to extend the "me too" benefit by including it in the successor agreement. Defendant disagreed, asserting that the arbitrator's language "and as extended by the parties" referred to and encompassed the parties' mutual agreement, set forth in the "ground rules," to extend the CBA until such time as a successor agreement was ratified by both parties and that the increases thus extended until October 7, 2002. Unable to resolve their disagreement, the parties ultimately agreed to return to the arbitrator to seek clarification of the award.

Following a hearing on this issue and the submission of posthearing briefs, on April 24, 2007, the arbitrator issued a second opinion and award clarifying that " '[a]s extended by the parties' means until ratification by the parties on October 7, 2002. The ground rules mutually adopted on April 24, 2001, stated that the agreement is to remain in effect until both parties ratify the successor contract." The arbitrator reasoned that, by mutual

agreement of the parties, "[t]he employees continued to be paid under the terms and conditions of the 1998-2001 contract until the new contract was ratified. This means that the 'me-too' wage increases continued to be part of the 1998-2001 agreement until it was officially superceded."

On May 16, 2007, 21 days after the arbitrator clarified his award, plaintiff filed a complaint to vacate a portion of arbitrator's award. It asserted that the arbitrator exceeded his authority under the CBA by awarding defendant the "me too" increases for the period from June 30, 2001, until October 7, 2002.

Defendant moved for summary disposition pursuant to MCR 2.116(C)(7). Defendant relied on a decision issued by the United States Court of Appeals for the Sixth Circuit, *Badon v Gen Motors Corp*, 679 F2d 93 (CA 6, 1982), a case filed under § 301 of the Labor Management Relations Act, 29 USC 185, to argue that the Michigan limitations period for an action to vacate a labor arbitration award is six months. Thus, defendant argued that plaintiff's complaint should be dismissed as untimely because it was filed more than six months after the arbitrator issued his October 28, 2005, award granting defendant's grievance.

Plaintiff initially acknowledged that a six-month limitations period generally applies to such claims, but argued that the limitations period should be equitably tolled given the unusual circumstances presented here, including the necessity of seeking clarification of the award from the arbitrator, that much of the delay in returning to the arbitrator was caused by defendant, and that plaintiff filed its complaint less than one month after the arbitrator issued his second opinion clarifying the phrase "and as extended by the parties." Later, in a reply to defendant's motion, plaintiff denied

that Michigan imposes a six-month limitations period on claims to vacate an arbitration award, asserting for the first time that such actions are subject to the six-year residual statute of limitations set forth in MCL 600.5813.

The trial court agreed and denied defendant's motion for summary disposition. The trial court ruled that the residual six-year limitations period set forth in MCL 600.5813 applied to plaintiff's claim to vacate a portion of the arbitration award and that even if a six-month limitations period applied, it would be equitably tolled considering the circumstances presented.

Plaintiff likewise moved for summary disposition, asserting that the arbitrator exceeded his authority by extending the "me too" benefits until October 7, 2002, because he did so relying on the "ground rules" (which extended the CBA pending ratification of a successor agreement) and not by interpreting language contained in the CBA. Defendant opposed the motion, asserting that the arbitrator was acting within his authority when he interpreted the "contract period" as including the parties' mutually agreed extension of the CBA until such time as the successor agreement was ratified. At the conclusion of oral argument, the trial court granted plaintiff's motion. It concluded that the arbitrator exceeded his authority by relying on the "ground rules," and not solely on the CBA, to determine that the "contract period" for purposes of the "me too" increases concluded on October 7, 2002.

Defendant first argues on appeal that the trial court erred in determining that actions to vacate an arbitration award are governed by a six-year limitations period. We disagree.

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Dressel v*

*Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003); *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998); *Rice v Auto Club Ins Ass'n*, 252 Mich App 25, 30; 651 NW2d 188 (2002). The question regarding the applicable limitations period presents a question of law that this Court also reviews de novo. *Detroit v 19675 Hasse*, 258 Mich App 438, 444; 671 NW2d 150 (2003); *City of Novi v Woodson*, 251 Mich App 614, 621; 651 NW2d 448 (2002).

The parties agree, correctly, that there is no statute or court rule setting forth a limitations period specifically for actions seeking to vacate labor arbitration awards arising from collective bargaining agreements. Although arbitration is addressed in both statutory provisions and court rules, there is no limitations period plainly applicable to actions relating to labor arbitration awards.

The Legislature has declared, in § 1 of the labor mediation act, that it is "the public policy of this state that the best interests of the people of the state are served by the prevention or prompt settlement of labor disputes . . . ." MCL 423.1. In furtherance of this policy, the Legislature has provided:

(1) Any labor dispute, other than a representation question, may lawfully be submitted to voluntary arbitration in the manner provided in this section. . . .

(2)(a) When a labor dispute involves the meaning or interpretation of an existing collective agreement between an employer and a labor organization and the collective agreement provides for the use of a designated arbitrator to decide disputes thereunder, or provides the method for selection of arbitrator or arbitrators, the provisions of that agreement shall be binding upon the parties, and shall be complied with unless the parties agree to submit the dispute to some other arbitration procedure.

\* \* \*

(4) An award rendered in a proceeding hereunder shall
be enforceable at law or in equity as the agreement of the
parties. [MCL 423.9d.]

However, the labor mediation act does not contain any
limitations period for actions to enforce, vacate, or modify
arbitration awards. MCR 3.602 establishes limitations
periods for filing a complaint to vacate an arbitration
award (21 days), a motion to vacate an award (91 days), or
a complaint to correct or modify an arbitration award (21
days). MCR 3.602(J) and (K). However, that rule only
governs statutory arbitration conducted under chapter 50
of the Revised Judicature Act (RJA), MCL 600.5001 to
600.5035. MCR 3.602(A). The pertinent provisions of the
RJA specifically except collective bargaining agreements
from that chapter. MCL 600.5001(3). Thus, the limitations
periods set forth in MCR 3.602 do not apply to awards
such as that at issue here.

In the absence of a specifically applicable limitations
period, defendant urges that a six-month period is
mandated by the Sixth Circuit's decision in *Badon*,
*supra*. Alternatively, plaintiff asserts that, in the ab-
sence of any specifically applicable limitations period,
this action is governed by the six-year residual limita-
tions period set forth in MCL 600.5813.

At issue in *Badon* was the proper limitations period for
a Michigan employee's "hybrid" action, brought under
§ 301 of the Labor Management Relations Act, 29 USC
141 *et seq.* (hereafter LMRA), against his former employer
for breach of contract and against his union for unfair
representation. The Sixth Circuit observed that the
United States Supreme Court had instructed federal
courts to "apply the most analogous state statute to
section 301 suits as a matter of federal law" and that "the
most appropriate [limitations] statute was that pertaining

to the vacation of arbitration awards." *Badon, supra* at 95-96, citing *Int'l Union, UAW v Hoosier Cardinal Corp*, 383 US 696, 704-705; 86 S Ct 1107; 16 L Ed 2d 192 (1966), and *United Parcel Service v Mitchell*, 451 US 56, 62; 101 S Ct 1559; 67 L Ed 2d 732 (1981).

Having decided that it was to apply the Michigan limitations period for actions to vacate arbitration awards, the court next attempted to ascertain Michigan law on this issue. It began by noting that the limitations period relating to arbitration awards set forth in the Michigan Court Rules applied only to statutory arbitration under the RJA, which explicitly excludes from its operation " 'collective contracts between employers and employees or associations of employees in respect to terms or conditions of employment.' " *Badon, supra* at 98, quoting MCL 600.5001(3). The *Badon* court then explained:

> By excluding labor disputes from statutory arbitration, Michigan has relegated labor arbitration to the realm of the common law. Appellants have not directed us to, nor have we found, any authority limiting the time in which labor arbitration awards may be vacated in Michigan. [The plaintiff] has, however, cited several cases which he claims employ Michigan's residual six-year personal action statute. [MCL 600.5813]. Unfortunately none of the cases cited is apposite. . . .
>
> In summary, we are left without guidance by the state of Michigan with respect to the time period within which actions to vacate labor arbitration awards must be brought. We must therefore decide this federal question on the strength of our own reasoning. That process leads us to conclude that the most appropriate statute of limitations under these circumstances is the six-month period found at section 10(b) of the National Labor Relations Act, 29 U.S.C. § 106(b). Although that period specifically governs unfair labor charges brought before the National Labor Relations Board, the policy behind that time period applies with

> equal force when similar charges are brought to a federal court under section 301 of the [LMRA]. [*Badon, supra* at 99.]

The *Badon* court commented that the six-month limitations period presented " 'the proper balance between the national interests in [a] stable bargaining relationship and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective-bargaining system.' " *Id.*, quoting *Mitchell, supra* at 70.

This Court applied *Badon* in *Romero v Paragon Steel Div, Portec, Inc (On Remand)*, 129 Mich App 566, 572-573; 341 NW2d 546 (1983). In *Romero*, on remand from our Supreme Court for reconsideration in light of *Badon*, this Court, quoting extensively from *Badon* and adopting its reasoning, determined that a six-month limitations period applied to bar the plaintiff's claims against his employer for wrongful discharge brought under § 301 of the LMRA. This Court also determined that a teacher's claim against his union alleging breach of the duty of fair representation was barred by a six-month limitations period, "[l]ikewise [finding] the result reached . . . [in] *Badon* to be sound." *Ray v Org of School Administrators & Supervisors, Local 28*, 141 Mich App 708, 711; 367 NW2d 438 (1985). Similarly, this Court applied *Badon* to again bar as untimely an action by an employee against her union and its agent, alleging that the union failed to file a timely grievance for arbitration on her behalf following termination of her employment. *Ogletree v Local 79, Service Employees Int'l Union*, 141 Mich App 738, 739-740, 743; 368 NW2d 882 (1985).

Next, this Court mentioned *Badon* in *Meadows v Detroit*, 164 Mich App 418, 434-435; 418 NW2d 100 (1987). That case involved an action by a former police officer against his employer alleging wrongful discharge

(among other claims) and against his union for breach of the duty of fair representation. In that context, this Court explained:

> When a duty of fair representation claim is asserted by itself or in combination with a claim of wrongful discharge, this Court has held that a six-month period of limitations applies. *Romero* [*supra* at 572-573]; *Ray* [*supra*]; *Ogletree* [*supra* at 745]. The adoption of such a brief limitations period is based on the following sound policy rationale:
>
> > "Where the parties have contracted to settle claims among themselves, their final decisions should not be exposed to collateral attack for long periods but should become final rather quickly. See *UMW v Barnes & Tucker Co*, 561 F2d 1093, 1096 (CA 3, 1977) ('It is not arbitration per se that federal policy favors, but rather final adjustment of differences by a means selected by the parties.')[.] Otherwise, the internal system will be just another step into a lengthy process of litigation rather than an efficient and unitary method of disposing of the high volume of grievances generated under any large scale employment contract." [*Romero, supra*, p 569, quoting *Badon* [*supra*]. See also *DelCostello v Int'l Brotherhood of Teamsters*, 462 US 151; 103 S Ct 2281; 76 L Ed 2d 476 (1983).] [*Meadows, supra* at 434-435.]

Of note to the instant appeal, neither *Badon* nor any of the aforementioned cases actually involved actions to vacate, modify, or enforce arbitration awards. Rather, *Badon* and its Michigan progeny applied a six-month limitations period to claims that a union had breached its duty of fair representation, whether brought alone or in conjunction with claims against the employer for wrongful termination or other improper employment action. *Meadows, supra.*

The limitations period applicable to an action to enforce an arbitration award was at issue in *Walkerville Ed Ass'n v Walkerville Rural Communities School*, 165 Mich App 341, 345; 418 NW2d 459 (1987). This Court

noted that Michigan law does not specify a limitations period for enforcing a labor arbitration award arising from private-sector collective bargaining agreements, or from public-sector agreements where the challenged employer action was not submitted to the Michigan Employment Relations Commission (MERC). Faced with this, this Court affirmed a trial court's decision extending by analogy the six-month limitations period found in § 16(a) of the public employment relations act (PERA), MCL 423.216(a), to the plaintiff's claim seeking enforcement of an arbitration award not meeting the conditions of that act. After noting that neither MCR 3.602(I) nor MCL 423.216(a) applied to the case before it, this Court reasoned:

> An arbitration proceeding, being based on an agreement, is contractual in nature. The difficulty in this case arises because of MCL 423.9d . . . , which, while allowing public labor disputes to be resolved by arbitration, does not specify a limitation period for enforcing the arbitration award. Rather, the award rendered "shall be enforceable at law or in equity as the agreement of the parties." MCL 423.9d(4) . . . . This requirement suggests that an arbitration award in the public sector should be subject to the six-year limitation period for contracts contained in the Revised Judicature Act, MCL 600.5807(8) . . . . This limitation period, although perhaps applicable under strict rules of statutory construction, appears to be an unduly lengthy period for enforcing an arbitration award. This is particularly so when viewed with the statutory declaration that the best interests of the people of this state are served by the prompt settlement of labor disputes. MCL 423.1 . . . . Similar policy considerations, under federal labor law, along with a consideration of the competing interests affected by the limitation period, have led federal courts to adopt the six-month limitation period contained in § 10(b) of the National Labor Relations Act, 29 USC 160(b), for arbitration purposes.

> We conclude that the trial court did not err in adopting
> the six-month limitation period. A six-month period is part
> of PERA; it effectuates the state's express policy in favor of
> the prompt resolution of labor disputes in the public sector.
> Adoption of the six-month limitation period also contrib-
> utes to statute of limitation uniformity. [*Walkerville, supra*
> at 345 (some citations omitted).]

Subsequently, however, our Supreme Court refused to apply this Court's decision in *Walkerville*, holding that PERA's six-month limitations period could not be applied by analogy and that actions to enforce arbitration awards are instead governed by the six-year limitations period for breach of contract actions and, where specific performance or other equitable relief is sought, are also subject to the equitable doctrine of laches. *Rowry v Univ of Michigan*, 441 Mich 1, 9-11; 490 NW2d 305 (1992). Stated differently, the Court explained that "a plaintiff ordinarily has six years to seek enforcement of an arbitration award[,]" although "in certain cases this time period may be substantially diminished if a plaintiff's arbitration award grants equitable relief and a delay in its enforcement is shown to prejudice the defendant in a way that evokes laches to bar the plaintiff's claim." *Id.* at 11-12.

We find particularly noteworthy Justice GRIFFIN's " 'reluctant' " concurrence in *Rowry*, "express[ing] . . . concern that application of a limitation period of six years, rather than six months, will seriously undermine state and federal policies favoring the prompt resolution of labor disputes" and urging the Legislature "to address this issue and to provide a more appropriate period of limitation in keeping with its stated policy of encouraging expeditious resolution of labor disputes." *Id.* at 12, 17. More specifically, Justice GRIFFIN (joined by Justice BOYLE) reasoned as follows:

In its analysis, the majority concludes that the six-year period generally applicable to contract actions is the appropriate limitation period to apply to this plaintiff's action to "enforce" a labor arbitration award. However, this case involves more than a simple breach of contract or a straightforward refusal to comply with an arbitration award. Plaintiff's cause of action arises out of a collective bargaining agreement between his union and his employer. The agreement establishes a grievance procedure designed to effect the prompt resolution of disputes. Such a procedure is in keeping with a state policy that discourages long delays in the resolution of labor disputes.

When it adopted the labor mediation act, our Legislature stated:

"It is hereby declared as the public policy of this state that the best interests of the people of the state are served by the prevention or prompt settlement of labor disputes . . . ." [MCL 423.1 . . . .]

This act encourages use of arbitration in the settlement of disputes by providing that an agreement to arbitrate "shall be binding upon the parties," and stating that the arbitration award "shall be enforceable at law or in equity as the agreement of the parties."

Concern at the state level for rapid resolution of labor disputes is consistent with established policy at the federal level. In *DelCostello [supra]*, the United States Supreme Court rejected the application of an extended state contract limitation period in an action arising from a collective bargaining agreement that provided for grievance resolution through arbitration. The Court explained:

"This system, with its heavy emphasis on grievance, arbitration, and the "law of the shop," could easily become unworkable if a decision which has given "meaning and content" to the terms of an agreement, and even affected subsequent modifications of the agreement, could suddenly be called into question as much as [three] years later.' " [462 US 169, quoting (*Mitchell, supra* at 64).]

Recognizing the importance of stable relationships in the workplace and the need for finality in a collectively bar-

gained grievance procedure, the Court elected to apply the six-month limitation period of § 10(b) of the Labor-Management Relations Act, 29 USC 160(b), "a federal statute of limitations actually designed to accommodate a balance of interests very similar to that at stake here . . . ." *DelCostello*, 462 US 169.

In *Samples v Ryder Truck Lines, Inc*, 755 F2d 881, 888 (CA 11, 1985), the United States Court of Appeals for the Eleventh Circuit applied the *DelCostello* rationale to an employee's action to enforce a labor arbitration award. The court found Georgia's six-year contract limitation period inapplicable because "a grievance arising during the term of a collective bargaining agreement bears little likeness to a common law breach of contract claim." Similarly, in *Int'l Ass'n of Machinists v Allied Products Corp*, 786 F2d 1561, 1564 (CA 11, 1986), the Eleventh Circuit applied the six-month limitation period to a union's action to compel arbitration, explaining that Alabama's six-year limitation period for contract actions "contravenes the federal policy of the prompt resolution of labor disputes."

As I see it, the same rationale counsels against application of a six-year contract limitation period in the instant case. . . . Surely, if a policy of prompt resolution of labor disputes is to have meaning, a relatively short limitation period should govern resort to the courts after exhaustion of a grievance procedure.

Although the Legislature has taken pains to declare that it is the public policy of this state to encourage prompt resolution of labor disputes, unfortunately, it has failed to provide suitable statutes of limitations for the implementation of that policy.

I agree with the reasoning set forth in *Walkerville* [*supra*] and I would adopt it in this case if the Legislature had not provided a residual or "catch-all" statute of limitations requiring:

"All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes." [MCL 600.5813 . . . .]

It is at least arguable that MCL 600.5807(8) . . . [the period of limitations for contract actions applied by the majority] does not apply in this case because that subsection establishes a limitation period for "actions to recover damages or sums due for breach of contract," whereas this plaintiff primarily seeks reinstatement to his position as a bus driver. However, because I conclude that the residual statute is applicable in any event, I am compelled to agree that plaintiff's claim is governed by a six-year limitation period.

Rather than allow a wide disparity to develop in the treatment of similar claims presented by public and private employees, I urge the Legislature to address this issue and to provide a more appropriate period of limitation in keeping with its stated policy of encouraging expeditious resolution of labor disputes. [*Rowry, supra* at 12-17.]

In her concurrence, Justice RILEY agreed with the majority that the six-year period of limitations for contract actions was applicable to the plaintiff's attempt to enforce his arbitration award. She reasoned that

[a]s the majority has recognized, the only reference in the labor mediation act, MCL 423.1 *et seq.* . . . , which applies to the enforcement of arbitration awards is § 9d(4), which provides:

"An award rendered in a proceeding hereunder shall be enforceable at law or in equity as the agreement of the parties." [MCL 423.9d(4) . . . .]

Two factors contribute to the conclusion that the six-year provision for breach of contract must apply here. First, as the majority recognized, the Legislature did not provide for an express time frame to enforce arbitration awards in the labor mediation act itself. Therefore, we are left with the belief that the Legislature intended for us to apply the existing six-year period of limitation for breach of contract actions to govern this issue. Second, we have held that "[a]n arbitrator's jurisdiction and authority to resolve a particular dispute concerning the appropriate interpretation of a collective bargaining agreement derives exclusively from the contractual agreement of the parties . . . ."

> Given that an arbitrator is bound by the terms of the collective bargaining agreement, there is nothing that would have precluded the parties from establishing a time limitation shorter than six years.
>
> Because neither the labor mediation act nor the collective bargaining agreement (nor the arbitration award itself) provides a statute of limitation to enforce an arbitration award, the six-year period of limitation for breach of contract must apply. [*Rowry, supra* at 18-19 (some citations omitted).]

Justice RILEY joined in Justice GRIFFIN's "call to the Legislature to address this issue and provide a more appropriate period of limitation in keeping with its stated policy of encouraging expeditious resolution of labor disputes." *Id.* at 18 n 1.

Despite the urgings of Justices GRIFFIN, BOYLE, and RILEY, however, the Legislature has taken no action in the nearly 17 years since *Rowry* was decided to provide a specific statute of limitations for the enforcement, or for actions seeking the vacation, of labor arbitration awards. Thus, this Court is left to construe its own earlier decisions (applying a six-month limitations period to actions against a union for unfair representation or actions brought under § 301 of the LMRA) and our Supreme Court's decision in *Rowry* (imposing a six-year limitations period on actions to enforce an arbitration award) to determine the applicable limitations period for actions, such as the instant action, that seek to vacate an arbitration award arising from a collective bargaining agreement. In this context, we conclude, albeit reluctantly, that actions to vacate arbitration awards are subject to a six-year limitations period.

We find that actions to vacate arbitration awards are more akin to actions to enforce arbitration awards than to actions for unfair representation. In *Rowry*, our Supreme Court held that the enforcement of an arbi-

tration award is subject to the six-year limitations period for breach of contract because "arbitration is a matter of contract. It is the agreement that dictates the authority of the arbitrators and the disputes to be resolved through arbitration." *Rowry, supra* at 10. Certainly, the same logic is equally applicable in the context of an action to vacate an arbitration award. Thus, we must reject defendant's suggestion that we should limit *Rowry*'s application to enforcement, not vacation, actions. We have no authority to impose such a limitation when nothing in *Rowry* would even vaguely suggest it.

Considering the Supreme Court's analysis in *Rowry* and the lack of legislative action thereafter, defendant can offer no compelling substantive legal basis to support the application of a six-month limitations period here. Thus, here, as in *Rowry*, despite the Legislature's "declared- ... public policy of this state" favoring "prompt settlement of labor disputes," MCL 423.1, this Court is compelled to conclude that plaintiff's action to vacate a portion of the arbitration award is subject to the six-year limitations period for contract actions (considering that such awards are "enforceable at law or in equity as the agreement of the parties" under MCL 423.9d[4], as suggested by *Rowry*) or to the six-year residual "catch-all" limitations period set forth in MCL 600.5813 (as suggested by Justice GRIFFIN in his concurrence in *Rowry*) for "[a]ll other personal actions" to which specific limitations periods are not applicable.[2]

Defendant next argues that the trial court erred by granting plaintiff's motion for summary disposition, because the arbitrator's award constituted an arguable

---

[2] Having concluded that plaintiff's claim is governed by a six-year limitations period, we need not address plaintiff's argument that any six-month limitations period was equitably tolled under the unique circumstances of this case.

construction of the terms of the CBA and was within his authority. We agree.

This Court reviews de novo a trial court's decision to enforce, vacate, or modify an arbitration award. *Bayati v Bayati*, 264 Mich App 595, 597-598; 691 NW2d 812 (2004); *Saveski v Tiseo Architects, Inc*, 261 Mich App 553, 554; 682 NW2d 542 (2004); *Tokar v Albery*, 258 Mich App 350, 352; 671 NW2d 139 (2003). Judicial review of an arbitrator's decision is narrowly circum-scribed. *Police Officers Ass'n of Michigan v Manistee Co*, 250 Mich App 339, 343; 645 NW2d 713 (2002). A court may not review an arbitrator's factual findings or decision on the merits. *Id.* Likewise, a reviewing court cannot engage in contract interpretation, which is an issue for the arbitrator to determine. *Konal v Forlini*, 235 Mich App 69, 74; 596 NW2d 630 (1999). Nor may a court substitute its judgment for that of the arbitrator. *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 497; 475 NW2d 704 (1991). "[H]ence [courts] are reluc-tant to vacate or modify an award when the arbitration agreement does not expressly limit the arbitrators' power in some way." *Id.* The inquiry for the reviewing court is merely whether the award was beyond the contractual authority of the arbitrator. *Police Officers Ass'n of Michigan*, *supra* at 343. If, in granting the award, the arbitrator did not disregard the terms of his or her employment and the scope of his or her authority as expressly circumscribed in the contract, " 'judicial review effectively ceases.' " *Id.*, quoting *Lincoln Park v Lincoln Park Police Officers Ass'n*, 176 Mich App 1, 4; 438 NW2d 875 (1989). Thus, " 'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' " a court may not overturn the decision even if convinced that the arbitrator committed a serious error. *Michigan Ass'n of Police v City of Pontiac*, 177 Mich App 752, 760;

442 NW2d 773 (1989), quoting *United Paperworkers Int'l Union, AFL-CIO v Misco, Inc*, 484 US 29, 38; 108 S Ct 364; 98 L Ed 2d 286 (1987).

As discussed earlier, the issue for arbitration was whether certain provisions of plaintiff's bargaining agreement with another bargaining unit triggered the "me too" clause in the CBA, which, as previously noted, provides:

> If another bargaining unit receives an increase higher than the settlement with AFSCME, such increase will also be granted to AFSCME for this contract period as a "me too" on wages. If gained by Police or Fire bargaining units, a "me too" [sic] retroactivity on wages for retirees.

At issue here is the arbitrator's interpretation of the phrase "for this contract period" as used in this provision. "[T]his contract period" is not defined in the CBA. However, two provisions address the termination and duration of the agreement:

> 55. TERMINATION AND MODIFICATION
>
> This Contract shall continue in full force and effect until 11:59 p.m. on June 30, 2001. If either party desires to modify or change this contract, it shall follow the procedure for negotiations as set forth in the paragraph entitled "Duration of Contract".
>
> 56. DURATION OF CONTRACT
>
> This Contract shall become effective as of its date of execution, and shall remain in full force and effect until 11:59 p.m., June 30, 2001, and from year to year thereafter unless either party hereto serves written notice upon the other at least ninety (90) calendar days prior to the expiration date of any subsequent automatic renewal period of its intention to amend, modify or termination [sic] this contract.

The parties did not reach agreement on a successor contract as of the CBA's June 30, 2001, expiration date.

It is not clear whether either party, or which of them, complied with paragraph 56 of the CBA by serving written notice on the other party of an intent to amend, modify, or terminate the CBA. What is clear is that, on April 24, 2001, the parties executed a written document, titled "Ground Rules for Negotiations," which specifically provided that the CBA was to "remain in effect" until a successor contract was ratified by both parties. The arbitrator, having been presented with the "ground rules" during the hearings, determined that the "me too" provision's phrase "for this contract period" included the period during which the parties agreed that the CBA would "remain in effect." The arbitrator reasoned that, by virtue of the mutually agreed "ground rules," "[t]he employees continued to be paid under the terms and conditions of the 1998-2001 contract until the new contract was ratified." Accordingly, the arbitrator further reasoned that the "me too" wage increase provision also continued to be part of the 1998-2001 agreement until it was officially superseded by ratification of the successor agreement.

The trial court ruled, as argued by plaintiff, that because the arbitrator relied on the "ground rules" to determine the duration of the phrase "for this contract period," and because those benefits were not extended in the successor contract, the arbitrator acted outside his authority by awarding "me too" benefits for the period from July 1, 2001, to October 7, 2002. Considering the limited scope of judicial review and that the arbitrator certainly was " 'arguably construing or applying' " the contractual language "for this contract period" having considered the evidence presented, *Michigan Ass'n of Police*, *supra* at 760, quoting *Misco, Inc*, supra at 38, we conclude that the trial court erred

by granting plaintiff's motion for summary disposition to vacate this portion of the arbitrator's award.[3]

The CBA provides that "[a]n arbitrator shall have no power to add to, subtract from or modify any of the terms of this contract . . . ." Contrary to plaintiff's assertion, considering the parties' written agreement that the contract would remain in effect during negotiations, the arbitrator cannot be said to have added to, subtracted from, or modified the CBA in issuing his award. Rather, being required to determine the duration of "this contract period," the arbitrator merely gave effect to the parties' own mutual agreement that the CBA would remain the operative agreement between the parties during the negotiation period. The CBA clearly contemplated that the parties might extend its operation by mutual agreement. Thus, giving effect to such an extension, even if achieved other than as contemplated in the CBA, does not contradict or offend the CBA in any way.

Certainly, there is no dispute that both parties operated under the CBA until October 7, 2002. As noted by the arbitrator, plaintiff's employees/defendant's members were paid under, and remained subject to all the provisions of, the CBA until that date. The arbitrator reasoned that if the contract's termination date was extended and the contract remained in effect after June 30, 2001, then the "me too" provision would also continue to be in effect during that contract period. On this basis, finding that the parties did in fact extend the termination date of the CBA, the arbitrator concluded that defendant's members were entitled to "me too"

---

[3] In reaching this conclusion, we observe that any consideration of whether "me too" benefits were included in the successor agreement is wholly irrelevant to the determination of the duration of "this contract period."

benefits for the entire operative contract period, from July 1, 1998, to October 7, 2002. We find no basis to conclude that the arbitrator acted beyond the material terms of the contract from which his authority was derived, *Saveski, supra* at 554, or that he was doing anything other than " 'arguably construing or applying the contract,' " *Michigan Ass'n of Police, supra* at 760, quoting *Misco, Inc, supra* at 38, in reaching this conclusion. Further, under the circumstances presented here, the determination of the duration of "this contract period" was a factual finding to be made by the arbitrator, and the arbitrator's factual findings are not subject to judicial review.[4] *Police Officers Ass'n of Michigan, supra* at 343.

There being no basis for the trial court to modify the arbitrator's award, it was defendant, and not plaintiff, who was entitled to summary disposition. We reverse and remand for the entry of an order granting summary disposition in favor of defendant. We do not retain jurisdiction. Defendant, being the prevailing party, may tax costs pursuant to MCR 7.219.

---

[4] In this context, we note that plaintiff apparently did not object to the arbitrator's receipt of the "ground rules" at the hearings and that plaintiff participated in returning to the arbitrator to seek clarification of the award, knowing that defendant asserted that the award encompassed the mutually agreed extension of the CBA during the negotiation period.