*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ADVANCED INTEGRATION TECHNOLOGY, INC., ADVANCE INTEGRATED TOOLING SOLUTIONS, LLC, doing business as ADVANCED INTEGRATION TECHNOLOGY MICHIGAN, JEFF HUTTON, and KEN LAGRANDEUR,

UNPUBLISHED
July 15, 2021

Plaintiffs-Appellants,

v

No. 354302
Macomb Circuit Court
LC No. 2019-001805-CB

REKAB INDUSTRIES EXCLUDED ASSETS, LLC,

Defendant-Appellee.

Before: RIORDAN, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Plaintiffs, Advanced Integration Technology, Inc., Advance Integrated Tooling Solutions, LLC, doing business as Advanced Integration Technology Michigan, Jeff Hutton, and Ken LaGrandeur (referred to collectively as plaintiffs), appeal as of right the order granting summary disposition to confirm the arbitration award in favor of defendant, Rekab Industries Excluded Assets, LLC,[1] and denying plaintiffs' renewed motion for summary disposition to vacate the arbitration award. We affirm.

---

[1] Defendant filed a motion in this Court to substitute Rekab Industries Excluded Assets, LLC, for Baker Aerospace Tooling & Machining. This Court granted defendant's motion and directed the clerk's office to designate Rekab Industries Excluded Assets, LLC, as defendant instead of Baker Aerospace Tooling & Machining. *Advanced Integration Tech, Inc, v Rekab Industries Excluded Assets*, *LLC*, unpublished order of the Court of Appeals, entered August 25, 2020 (Docket No. 354302). The contract at issue refers to defendant as Baker Machining & Mold Technologies, Inc.

## I. BASIC FACTS

Defendant supplies "machined 3-D components" to different types of industries, including aerospace, aircraft, automotive, defense, electronics, hardware, heavy equipment, medical and power generation. Advanced Integration Technology, Inc., is a Texas-based industrial automation corporation, which develops and manufactures turnkey factory integration and tooling solutions for the aerospace industry in numerous locations both nationally and internationally. Hutton and LaGrandeur are the owners and representatives of Advanced Integration Technology, Inc. In January 2010, Hutton and LaGrandeur started to look for space in Michigan to start a Michigan division of Advanced Integration Technology, Inc., which would come to be known as Advanced Integration Technology Michigan. Kevin Baker and Scott Baker invited Hutton and LaGrandeur to use their building in Macomb, Michigan.

On February 1, 2010, the parties entered into the following contract:

### AGREEMENT

I Jeff Hutton and Ken Lagrandeur [sic], also representing <u>Advanced Integration Technology, Inc.</u> & related companies has usage, at own risk, of shop space at 16936 Enterprise Dr. Macomb, Mi. 48044 from Prime Investment LLC, a month to month rent of $10.00 per month. We have our own workers comp. & liability insurance.

We agree to offer first right of refusal on machining work that is selected to be outsourced to Baker Machining & Mold Technologies inc. [sic] for competitive quote.

We and related companies will not hire any employees, or within three years of being an ex-employee, of Baker Machining & Mold technologies Inc.

Baker Machining will also have access to a small office for a small fee at local A.I.T. facility to help process machining work if needed.

Relevant to the issues raised on appeal, an earlier draft of the contract, which was not agreed to or signed by the parties, contained the provision: "We agree to give all machining work exclusively to Baker Machining & Mold Technologies inc. [sic] to machine or outsource."

In March 2010, plaintiffs vacated defendant's building after finding their own permanent facility. There is no dispute that plaintiffs outsourced machining work to defendant after vacating defendant's building. There is also no dispute that plaintiffs were offering machining work to companies other than defendant. The relationship between plaintiffs and defendant became contentious and, on March 24, 2013, Hutton sent Kevin an e-mail stating, "I hope this is all a misunderstanding, I will leave our future relationship in your hands. Until we have a clear understanding[,] I recommend you find something else [i.e., something other than outsourced machining work from plaintiffs] to look forward to."

Defendant filed a complaint for breach of contract, contending that plaintiffs breached the agreement to offer defendant the right of first refusal on all machining work being outsourced by plaintiffs. The parties stipulated to dismiss the case and to arbitrate the matter. The parties entered into an arbitration agreement that provided, in part:

### ARBITRATION AGREEMENT

\* \* \*

**WHEREAS**, the parties to this Agreement mutually desire to resolve the Litigation and the claims asserted therein by way of binding arbitration pursuant to the terms set forth below and in accordance with the provisions of the Uniform Arbitration Act, MCLA 691.1681 *et seq*. (the "Act"), and to dismiss the Litigation subject to the Circuit Court retaining jurisdiction for the purpose of enforcing or vacating the arbitration award.

**THEREFORE**, the parties agree as follows:

1.    The parties hereby agree to Daniel Ryan ("Arbitrator") serving as arbitrator for the arbitration hearing for the Litigation. Accordingly, the parties, through their respective counsel, will stipulate to dismissal of the Litigation subject to the Circuit Court retaining jurisdiction for the purpose of enforcing or vacating the arbitration award to be rendered pursuant to this Agreement and/or the judicial review provided for by paragraph 7 of the Agreement.

\* \* \*

3.    Any documents, depositions, or testimony developed during discovery or presented at the arbitration hearing shall be confidential limited to use in the arbitration proceeding only and not subject to disclosure without written consent of the parties. Discovery shall be conducted consistent with the Michigan Court Rules . . . .

\* \* \*

5.    The Michigan Court rules pertaining to summary disposition motions (MCR 2.116) shall apply to this arbitration. . . . The arbitrator shall apply Michigan law regarding summary disposition, including MCR 2.116, in deciding any motion for summary disposition. The arbitrator shall issue a written decision on any such motion, which sets forth the legal and factual basis for the decision. . . .

6.    It is agreed that the award rendered by the arbitrator is final and binding on the parties. The award, however, may be appealed for vacatur to the Circuit Court (a) for the reasons set forth in MCR 3.602 and/or (b) if the award contains errors of law.

Defendant filed a motion for summary disposition on liability with the arbitrator, contending that the right of first refusal to bid on plaintiffs' outsourced machining jobs did not terminate when plaintiffs moved out of defendant's building and that plaintiffs breached the contract every time they failed to offer defendant the right of first refusal on an outsourced machining job. Plaintiffs also filed a motion for summary disposition, asserting that the contract was only a rental agreement, which terminated when plaintiffs moved out of defendant's building. The arbitrator issued an order granting defendant's motion for summary disposition on liability, but set the issue of damages for an arbitration hearing. Because the arbitrator's initial order failed to set forth the arbitrator's factual and legal conclusions, the arbitrator issued an amended opinion and order granting defendant's motion for summary on liability, concluding:

> The Arbitrator finds that there is a rudimentary agreement between [defendant] and [plaintiffs] which encompassed both rent of space in each other's facilities and their business relationship. Moving out by [plaintiffs] in 2010 was clearly a sign to [defendant] that [plaintiffs were] no longer going to be paying $10 monthly rent but it was not a termination of their business relationship. The fact that the agreement expressly provides that after [plaintiffs] moved out of [defendant's building] that [defendant] would reciprocally have access to a small office for a small fee at [plaintiffs'] facility to help process "competitive" machining work is evidence that the parties intended to continue their business relationship beyond [plaintiffs] moving out of the [defendant] facility in 2010.

The arbitrator next considered the "first question," which was the "nature of the business relationship and its duration," to which the arbitrator stated:

> As to nature of the agreement on those issues of more importance to this matter, the agreement provides that [plaintiffs] would "offer first right of refusal on machining work that is selected to be outsourced to [defendant] for competitive quote." As noted by [plaintiffs], the final agreement gives far more discretion to [plaintiffs] as to what work is subject to the right of first refusal and is significantly different than what was originally proposed, i.e. "agreeing to give all machining work exclusively to [defendant] to machine or outsource." Succinctly, the evidence presented demonstrates that [plaintiffs] breached and failed to comply by offering right of first refusal on machining work that is selected to be outsourced by [plaintiffs] to [defendant] that could have been competitively quoted as required by the agreement based upon the unfettered and perhaps uninformed discretion of Hutton, Lagrandeur [sic] and others at [plaintiffs] who believed either [plaintiffs] no longer had to do so or that [defendant] did not have the capacity, equipment, tooling, etc . . . to be "competitive" on machining work.
>
> The more difficult issue is what, if any damages, have been sustained or can be proven by [defendant]. In order to clarify a potential ambiguity as to the scope of the agreement which impacts upon the issue of damages, and the intent of the parties, the arbitrator notes that the final agreement specifically indicates "machining work selected to be outsourced [by plaintiffs] to [defendant]" is a significant departure from the first agreement which provided "all machining work exclusively to [defendant] to machining or outsource."

-4-

The arbitrator then considered the "second question," which involved the "duration of an 'indefinite' business relationship," stating:

> [C]ase law is clear that such a relationship continues until termination or revocation by one side or the other. Based upon the evidence presented, it is clear that the business relationship was expressly terminated by [plaintiffs] on March 24, 2013. The business relationship was not terminated when [plaintiffs] moved out in 2010. The agreement expressly provided that [defendant] could move into [plaintiff's] facility to facilitate the "competitive" machining work referred to in the agreement which clearly reflects an intent when viewed in conjunction with the other provisions of the agreement to carry on their business relationship beyond the initial space accommodation to [plaintiffs] by [defendant].

> Consequently, the arbitration will focus on what, if any damages, [defendant] can prove were sustained between February 1, 2010 and March 24, 2013 for breach of the "offer first right of refusal on machining work that is selected [by plaintiffs] to be outsourced to [defendant] for competitive quote" that went to others.

Subsequently, the arbitrator held 10 days of arbitration hearings, after which the arbitrator issued an opinion and arbitration award, awarding defendant $3,243,690 plus 5% prejudgment interest as of March 24, 2013.

Plaintiffs filed a complaint in the circuit court to vacate the arbitration agreement, alleging that the arbitrator exceeded the scope of his authority and committed errors of law by granting defendant's motion for summary disposition on liability in contravention of MCR 2.116 and Michigan law. Plaintiffs and defendant filed cross-motions for summary disposition to vacate and confirm the arbitration award, respectively. The circuit court issued an opinion and order remanding the matter to the arbitrator for clarification, concluding that it was unclear whether the arbitrator found an ambiguity as to the scope of the contract and whether the arbitrator improperly considered extrinsic evidence.

On remand, the arbitrator issued an order clarifying his prior amended opinion and order. He explained:

> Summary disposition was granted on the issue of breach of the unambiguous terms of the second agreement, the remaining issue involved the mere calculation of damages. As to this issue, the primary dispute between the parties was focused upon whether the contract ended when [plaintiffs] vacated [defendant's] premises in 2010 or when [plaintiff] gave written notice of termination in 2013. [Plaintiffs] admitted that it did not offer the right of first refusal to [defendant] after it moved out of [defendant's] facility in 2010 thus breaching the agreement.

> Once breach was established, the remaining issue was the scope of damages for that breach which would have been broader under the first version of the agreement than the second. The ambiguity created was as to damages, created in

part by [defendant's] reference to the prior first draft of the agreement, and the arbitrator took subsequent testimony to clarify the scope of the damages, not the breach. As noted in the arbitrator's earlier decision, the arbitrator concluded that the unambiguous second version of the agreement terminated in 2013 when [plaintiff] provided written notice of termination to [defendant].

\* \* \*

The subsequent arbitration hearing was limited to establishing the mere calculation of damages resulting from the admitted breach of the first refusal agreement to outsource machining work between 2010 and 2013. The damage issue required factual development as to what machining work would have been included in the right of first refusal from 2010 to 2013 in a good faith interpretation of the unambiguous second agreement. As MCR 2.116 succinctly states in part, "Except as to the amount of damages, . . . ." Consequently, testimony was taken solely on the damage issue. The parties disagreed on scope of damages "or buckets" as the experts referred to it, and [the] arbitration hearing was conducted relative to the scope of what machining work was to be outsourced and subject to the right of first refusal.

The arbitrator further asserted that, "[a]fter extensive briefing, testimony and argument, the arbitrator resolved the damage issue and, consistent with the terms of the unambiguous second agreement, what machining work was to be included and excluded in the calculation of damages."

In the circuit court, the parties filed renewed cross-motions for summary disposition. The circuit court granted defendant's renewed motion for summary disposition to confirm the arbitration award. The circuit court stated that, "[w]hile the Arbitrator characterized the ambiguity as one of damages, he also clarified that the 'damages issue required factual development as to what machining work would have been included.' " The court concluded that, on the basis of the arbitrator's clarification order, the arbitrator permitted further factual development on the scope of the contract during the arbitration hearings, and because he "ultimately permitted factual development on the work that was subject to the right of first refusal, he in effect permitted factual development on the question that he found ambiguous in the agreement." For that reason, the court concluded that the arbitrator properly followed the law regarding the interpretation of contracts.

## II. ARBITRATION AWARD

"This Court reviews de novo a trial court's decision to enforce, vacate, or modify an arbitration award." *Ann Arbor v American Fed of State, Co, & Muni Employees (AFSCME) Local 369*, 284 Mich App 126, 144; 771 NW2d 843 (2009). This Court reviews de novo whether an arbitrator exceeded his powers. *Miller v Miller*, 474 Mich 27, 30; 707 NW2d 341 (2005). "Judicial review of an arbitrator's decision is narrowly circumscribed." *AFSCME Local 369*, 284 Mich App at 144. "[A] reviewing court cannot engage in contract interpretation, which is an issue for the arbitrator to determine." *Id*. "The inquiry for the reviewing court is merely whether the award was beyond the contractual authority of the arbitrator." *Id*. "If, in granting the award, the arbitrator did not disregard the terms of his or her employment and the scope of his or her authority as

expressly circumscribed in the contract, judicial review effectively ceases." *Id*. (quotation marks and citation omitted). "A reviewing court may not review the arbitrator's findings of fact . . . ." *Washington v Washington*, 283 Mich App 667, 672; 770 NW2d 908 (2009) (citations omitted).

Under the Uniform Arbitration Act, "[o]n motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if . . . [the] arbitrator exceeded the arbitrator's powers." MCL 691.1703(1)(d). See also MCR 3.602(J)(2)(c). "[A]rbitrators have exceeded their powers whenever they act beyond the material terms of the contract from which they primarily draw their authority, or in contravention of controlling principles of law." *Washington*, 283 Mich App at 672 (quotation marks and citation omitted). "This is because arbitrators derive their authority from the parties' contract and arbitration agreement and they are bound to act within those terms." *Dohanyos v Detrex Corp*, 217 Mich App 171, 176; 550 NW2d 608 (1996). "[A]n allegation that the arbitrators have exceeded their powers must be carefully evaluated in order to assure that this claim is not used as a ruse to induce the court to review the merits of the arbitrators' decision." *Gordon Sel-Way*, *Inc v Spence Bros*, *Inc*, 438 Mich 488, 497; 475 NW2d 704 (1991).

"[A]ny error of law must be discernible on the face of the award itself[.]" *Washington*, 283 Mich App at 672. "By 'on its face' we mean that only a legal error that is evident without scrutiny of intermediate mental indicia, will suffice to overturn an arbitration award. Courts will not engage in a review of an arbitrator's 'mental path leading to [the] award.' " *Id*. (quotation marks and citation omitted). "Finally, in order to vacate an arbitration award, any error of law must be so substantial that, but for the error, the award would have been substantially different." *Id*. (quotation marks and citation omitted).

When interpreting a contract, the primary goal "is to give effect to the parties' intention at the time they entered into the contract." *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016). Therefore, it is necessary to examine "the language of the contract according to its plain and ordinary meaning." *Id*. If contract language is unambiguous, it is necessary to "interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *Kendzierski v Macomb Co*, 503 Mich 296, 311; 931 NW2d 604 (2019). "A contract is ambiguous if the language is susceptible to two or more reasonable interpretations." *D'Avanzo v Wise & Marsac*, *PC*, 223 Mich App 314, 319; 565 NW2d 915 (1997). "In an instance of contractual ambiguity, factual development is necessary to determine the intent of the parties and summary disposition is inappropriate" *Id*. "[W]hether contract language is ambiguous is a question of law[.]" *Klapp v United Ins Group Agency*, *Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003).

## A. DURATION OF THE CONTRACT

Plaintiffs argue that the circuit court erred by granting defendant's renewed motion for summary disposition because the arbitrator improperly granted defendant summary disposition on liability despite (1) the contract being ambiguous as to whether defendant's right of first refusal terminated when plaintiffs vacated defendant's building, and (2) there being a genuine issue of material fact as to when the contract terminated. We disagree.

Plaintiffs' contention that there was an ambiguity as to whether the contract terminated when plaintiffs vacated defendant's building is without merit. Plaintiffs are asking this Court to interpret the contract, which this Court cannot do. *AFSCME Local 369*, 284 Mich App at 144 (stating that "a reviewing court cannot engage in contract interpretation, which is an issue for the arbitrator to determine."). Here, the arbitrator concluded that the contract established a business relationship between the parties as well as a rental agreement. The business relationship gave defendant a right of first refusal to give a competitive bid on machining work that plaintiffs outsourced. The arbitrator further concluded that, on the basis of the terms of the contract alone, defendant's right of first refusal did not terminate when plaintiffs vacated defendant's building. Because it was the arbitrator's role to determine whether the contract was ambiguous as to whether the contract terminated when plaintiffs vacated defendant's building, this Court cannot interfere with that determination.

Plaintiffs' contention that the arbitrator erred by granting summary disposition on liability because there was a genuine issue of material fact as to when the contract terminated, also lacks merit. In the amended opinion and order, the arbitrator acknowledged that the parties disputed (1) whether the contract included an agreement for a right of first refusal, and (2) the duration of the agreement for a right of first refusal. Prior to the issuance of the arbitrator's amended opinion and order, the parties engaged in discovery on these issues. In plaintiffs' motion for summary disposition, plaintiffs first argued that the contract was a rental agreement only, which involved an at-will month-to-month tenancy that terminated when plaintiffs vacated defendant's building. Second, plaintiffs argued that, if the right of first refusal was a severable provision from the rental agreement provision, the right of first refusal also terminated when plaintiffs vacated defendant's building. Plaintiffs contended that, because the contract did not contain a term, duration, or manner of termination indicating when the right of first refusal ended, it ended when plaintiffs vacated defendant's building. In contrast, defendant argued that plaintiffs terminated the agreement for the right of first refusal via e-mail on March 24, 2013. Defendant supported its position with a number of e-mails indicating that the parties' business relationship continued after plaintiffs moved out of defendant's building. The e-mails culminated in a March 24, 2013 e-mail by Hutton stating that defendant should "find something" other than outsourced machining work from plaintiffs "to look forward to."

The arbitrator concluded, on the basis of the plain terms of the contract, that the contract encompassed both a rental agreement and an agreement for a right of first refusal. The arbitrator concluded that, when plaintiffs vacated defendant's property in March 2010, it was a clear indication that plaintiffs were no longer paying rent to defendant. However, the arbitrator also determined, on the basis of the plain terms of the contract, that the right of first refusal did not terminate when plaintiffs vacated the property and the contract was unambiguous as to this term. Thereafter, the arbitrator concluded that, because the right of first refusal was for an indefinite duration, the agreement terminated, as a matter of law, upon revocation by one of the parties. "[W]here the parties have not agreed upon the term, duration, or manner of termination of such an agreement it is generally deemed to be terminable at the will of either party because they have not agreed otherwise." *Lichnovsky v Ziebart Int'l Corp*, 414 Mich 228, 240–241; 324 NW2d 732 (1982). Here, the contract did not contain any term, duration, or manner of termination indicating when, or for what reason, the right of first refusal would terminate, so the arbitrator did not err by concluding that it would terminate upon revocation by either party.

As a result, it was necessary for the arbitrator to consider when the right of first refusal was terminated by either of the parties. In support of their argument, plaintiffs presented the depositions of Hutton and LaGrandeur. Hutton stated that he did nothing to terminate the agreement for the right of first refusal because it was his belief that it terminated on its own when plaintiffs vacated defendant's building. LaGrandeur testified that the right of first refusal terminated when plaintiffs vacated defendant's building in March 2010 because the "document expired," and any agreements in the document expired. LaGrandeur never discussed the termination of the contract with Kevin and Scott. Even viewing this evidence in the light most favorable to plaintiffs, there is not a genuine issue of material fact as to when the right of first refusal was terminated. The arbitrator concluded, on the basis of the plain terms of the contract alone, that the right of first refusal was a separate agreement than the rental agreement and did not terminate when plaintiffs vacated defendant's property. Because the contract was unambiguous, extrinsic evidence, i.e., Hutton and LaGrandeur's testimony as to their subjective belief as to when the right of first refusal terminated, was not permitted to demonstrate the intent of the parties. *Shay v Aldrich*, 487 Mich 648, 667; 790 NW2d 629 (2010). Therefore, the arbitrator did not error in concluding that there was no genuine issue of material fact that the agreement for the right of first refusal terminated on March 24, 2013.

Plaintiffs also contend that the arbitrator committed an error of law by ignoring the principles of Michigan law that dictate rental agreements. Specifically, plaintiffs contend that a month-to-month tenancy for an uncertain duration is terminable at will and that an at-will tenant may terminate the month-to-month tenancy with one month's notice. We disagree. The arbitrator found that the contract was both a rental agreement and an agreement for defendant to have a right of first refusal. Consequently, principles of law regarding rental agreements are irrelevant to the arbitrator's conclusion that the right of first refusal continued after plaintiffs vacated the premises.

In addition, plaintiffs have failed to establish that granting summary disposition on liability affected the outcome of the proceedings. Plaintiffs only provided evidence that the right of first refusal terminated when they vacated defendant's property. Plaintiffs provide no other argument and do not point to any other evidence that would have created a factual dispute if the date of termination had been litigated at the arbitration hearing. As a result, plaintiffs have failed to show that, even if the arbitrator had allowed the parties to litigate the issue at the arbitration hearing, the result would have been different. See *Washington*, 283 Mich App at 672.

## B. AMBIGUITY AS TO THE SCOPE OF THE CONTRACT

Plaintiffs also argue that the arbitrator exceeded his authority and committed an error of law by granting defendant's motion for summary disposition on liability despite finding that the scope of the contract, i.e., which types of machining jobs were supposed to be offered to defendant as part of the right of first refusal, was ambiguous and after considering extrinsic evidence to interpret the contract. We disagree.

The arbitrator held that the contract unambiguously provided defendant with a right of first refusal and that the right of first refusal extended beyond plaintiffs vacating defendant's building. As stated earlier, the arbitrator's interpretation of the contract is not reviewable by this Court. See *AFSCME Local 369*, 284 Mich App at 144. The arbitrator also determined that, as admitted by plaintiffs, defendant was not offered a right of first refusal by plaintiffs after plaintiffs vacated

defendant's building. There is also no dispute that plaintiffs outsourced machining jobs after vacating defendant's building. Thus, in light of the arbitrator's interpretation of the contract, the uncontradicted evidence shows that plaintiffs breached the agreement, so the arbitrator did not exceed his authority or commit errors of law by concluding that plaintiffs breached the contract to offer defendant the right of first refusal on machining jobs. Instead, the court properly set the issue of damages for an arbitration hearing.

Plaintiffs primary argument focuses on the fact that the arbitrator found an ambiguity as to the scope of the contract, but never addressed the ambiguity at the arbitration hearing as required by Michigan law. The record does not support this argument. At the hearing, the arbitrator considered the scope of the contract, i.e., the type of machining work for which defendant was supposed to have the right of first refusal, to be an issue of damages since the arbitrator could not evaluate the damages without ascertaining the type of jobs on which defendant was entitled to bid. The arbitrator explicitly explained in the clarification order that the parties disagreed as to the scope of damages, and therefore, an "arbitration hearing was conducted relative to the scope of what machining work was to be outsourced and subject to the right of first refusal." The arbitrator clarified that the issue of whether defendant was entitled to bid on jobs that would have required defendant to outsource the job to a third party was addressed during the hearing. Evidence was presented on the scope of the contract during the hearing. Based on that evidence, the arbitrator concluded that defendant was not permitted to outsource jobs to third parties. Thus, the arbitrator rendered an award on the basis of the evidence presented at the hearing and the arbitrator's conclusion regarding the scope of the contract. Plaintiffs' argument that the arbitrator failed to address the scope of the contract during the hearing or make factual findings on this issue is without merit.

Plaintiffs also argue that the circuit court erred by denying plaintiffs' renewed motion for summary disposition to vacate the arbitration award because, despite what occurred at the arbitration hearing, clear errors of law existed on the face of the arbitration award. We disagree.

Plaintiffs contend that it is evident from the face of the initial arbitration award that the arbitrator disregarded MCR 2.116 and Michigan law by granting summary disposition on liability for defendant despite stating that there was an ambiguity as to the scope of the agreement. Although plaintiffs are correct that "any error of law must be discernible on the face of the award itself," *Washington*, 283 Mich App at 672, we disagree that clear errors of law existed on the face of the arbitration award. As addressed earlier, the arbitrator issued a clarification order, clarifying that he did not find an ambiguity regarding the issues on which he granted summary disposition. The arbitrator explained that, on the basis of the contract alone, there was an agreement for a right of first refusal and that agreement did not terminate when plaintiffs vacated defendant's property. Further, the arbitrator clarified that an ambiguity existed regarding the scope of the contract, which the arbitrator described as an issue of damages. Moreover, the arbitrator explained that, because of that ambiguity, he did not grant summary disposition regarding that issue, but rather, that issue was addressed during the arbitration hearing. Therefore, contrary to plaintiffs' contention, the arbitrator did not grant summary disposition as to the scope of the contract, but rather, the arbitrator properly heard testimony on the issue before deciding the parties' intent regarding what machining work was to be included in the right of first refusal. Thus, there were no clear errors of law on the face of the arbitrator's amended opinion and order, the initial arbitration award, or the clarification order. Therefore, the circuit court did not err in confirming the arbitration award on this ground.

-10-

## II. AUTHORITY TO REMAND TO THE ARBITRATOR

Plaintiffs argue that the circuit court should not have remanded the case to the arbitrator for clarification, but rather, the circuit court should have vacated the arbitration award. We disagree. MCL 691.1700(4) allows the circuit court to remand to the arbitrator "[t]o clarify the award." Therefore, the circuit court was not required to vacate the arbitration award on the basis that it was unclear or appeared that the arbitrator may have erred.

## III. EXCEEDED THE SCOPE OF REMAND

Plaintiffs next contend that the arbitrator exceeded the scope of the remand order by modifying and rewriting the arbitration award. We disagree. In the amended opinion and order granting summary disposition on liability, the arbitrator made multiple conclusions, including that (1) the contract was a rental agreement and a business relationship granting defendant a right of first refusal on outsourced machining jobs, (2) the contract did not terminate when plaintiffs vacated defendant's building, (3) plaintiffs breached the contract by not offering defendant the right of first refusal on machining jobs after vacating defendant's building, and (4) there was a potential ambiguity as to the scope of the agreement, which affected damages. In the clarifying order, the arbitrator explained that "[s]ummary disposition was granted on the issue of breach of the unambiguous terms of the second agreement," and that " [o]nce breach was established, the remaining issue was the scope of damages for that breach which would have been broader under the first version of the agreement than the second." The arbitrator further explained that "[t]he ambiguity created was as to damages, created in part by defendant's reference to the prior first draft of the agreement, and the arbitrator took subsequent testimony to clarify the scope of the damages, not the breach." Therefore, in both the amended opinion and order and the clarification order, the arbitrator made the same findings and conclusions.

In conclusion, the record does not indicate that the arbitrator exceeded his authority or committed a clear error of law. Therefore, the circuit court did not err by granting defendant's motion for summary disposition to confirm the arbitration award.

Affirmed. Defendant may tax costs as the prevailing party. MCR 7.219(A).

/s/ Michael J. Riordan
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro