# Court of Appeals, State of Michigan

## ORDER

## AMENDED

Janet Lashar Eppel v Christopher James Eppel

Docket No.  335653; 335775

LC No.  11-048048-DM

Jane E. Markey
Presiding Judge

Joel P. Hoekstra

Amy Ronayne Krause
Judges

Pursuant to the opinion issued January 9, 2018, these cases are REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 28 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. The proceedings on remand are limited to these issues.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

JAN 1 0 2018
_____
Date

_____
Chief Clerk

JANET LASHAR EPPEL, aka JANET L.
LASHAR,

        Plaintiff-Appellant,

v

CHRISTOPHER JAMES EPPEL,

        Defendant-Appellee.

FOR PUBLICATION
January 9, 2018
9:25 a.m.

No. 335653
Allegan Circuit Court
LC No. 11-048048-DM

JANET LASHAR EPPEL, aka JANET L.
LASHAR,

        Plaintiff-Appellee,

v

CHRISTOPHER JAMES EPPEL,

        Defendant-Appellant.

No. 335775
Allegan Circuit Court
LC No. 11-048048-DM

Before: MARKEY, P.J., and HOEKSTRA and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this consolidated appeal, both parties appeal by leave granted different portions of an order entered by the trial court vacating part of an arbitration award and remanding the matter to the arbitrator. This case arises out of a divorce proceeding commenced in early 2011 that resulted in entry of a judgment of divorce in 2012, followed by extensive disputes over implementation details. The parties eventually stipulated to binding arbitration, which, after further contentiousness before the arbitrator, resulted in an award that plaintiff found acceptable but defendant did not. The trial court vacated part of the award and remanded for the arbitrator to consider awarding plaintiff attorney fees "based on need." We affirm in part, reverse in part, and remand.

The parties were married in 1992, and they had three children, the youngest of whom was born in May of 2000. The divorce was contested, but apparently the parties were able to

cooperate effectively regarding parenting time, custody, their children's various issues, and payment of expenses. The trial court ultimately entered a judgment of divorce, along with a uniform child support order and a uniform spousal support order. Both had attachments describing additional obligations. Relevant to the instant appeal, the spousal support order's attachment stated, in pertinent part:

> As and for additional spousal support, the Defendant shall pay 19.5% of Defendant's gross bonuses and/or deferred compensation within 15 days of payment. He shall provide proof as to the gross amounts. This provision applies to bonuses and/or deferred compensation beginning in 2012. Additionally, the Defendant shall pay 19.5% of any and all restricted and performance shares when they vest based upon the market value of the gross vested shares at the vesting date or the first available date after lock-out ends. This additional spousal support obligation shall cease after 84 months, or shall terminate earlier upon the event of Plaintiff's death within 36 months of the entry of the Judgment of Divorce, or Plaintiff's death, remarriage or cohabitation after 36 months from the entry of the Judgment of Divorce. Mr. Eppel is to provide proof of receipt of all bonuses, deferred compensation, restricted and performance shares within 15 days of receipt. The term "lock-out" referenced above refers to the blackout period in which a shareholder is prohibited from purchase or sale of securities under SEC regulations.

Defendant draws a distinction between the language used in the above order and the attachment to the Uniform Child Support Order, which provides, in relevant part, that:

> for additional child support, for 3 children the Defendant shall pay 16.7% of his gross bonuses, deferred compensation, vesting restricted shares and performance shares, the net value of vested options received after 12/31/11 as if they were exercised on the date of vesting or the first available date after lock-out ends, 13.3% for two children of all above-stated categories, and 8.7% for one child.

As will be discussed, defendant believes that the child support attachment therefore includes a requirement to pay support based on stock options, but the spousal support attachment does not.

The parties engaged in a significant amount of post-judgment conflict over numerous matters, most of which are no longer at issue. Relevant to this appeal, the trial court entered a qualified domestic relations order granting plaintiff half of defendant's interest, as of December 31, 2011, in something called the "Perrigo Profit Sharing and Investment Plan." Simultaneously, the trial court entered a domestic relations order granting plaintiff half of defendant's interest, also as of December 31, 2011, in the "Perrigo 2005 Nonqualified Deferred Compensation Plan (As Amended and Restated Effective January 1, 2007)." Perrigo was defendant's employer until some time around September of 2013, after which he eventually obtained employment with Allied Specialty Vehicles (ASV). Defendant was terminated from ASV effective September 25,

2015, but remained in some manner of a "consulting" role for another twelve months. Relevant to the instant appeal, a letter[1] so stating provided, *inter alia*, the following "consulting benefits":

> You hold 1,150 shares of common stock of the Company (the "Shares"); and pursuant to the provisions of the Company's 2010 Long-Term Incentive Plan, as amended (the "Plan") and the Nonqualified Stock Option Agreements between you and the Company dated as of January 20, 2014 (the "Option Agreements"), you own stock options to purchase 3,000 shares of common stock of the Company (the "Options") at a strike price of $354.74 which had the following vesting schedule:
>
> - 1,000 Optioned Shares (the "Performance Based Options") shall vest 25% per annum over 4 years. Records indicate 500 Optioned Shares have previously vested.
>
> - 1,000 Optioned Shares (the "Performance Based Options) shall vest upon the Company achieving annual earnings before interest, taxes, depreciation and amortization (EBITDA) on a Last Twelve Months (LTM) basis of at least $80 million. These Optioned Shares have previously vested.
>
> - 1,000 Optioned Shares (the "Performance Based Options") shall vest upon the Company achieving annual earnings before interest, taxes, depreciation and amortization (EBITDA) on a Last Twelve Months (LTM) basis of at least $90 million. These Optioned Shares have previously vested.
>
> Current fair market value of all common stock and Optioned Shares is $594.89. Pursuant to the Shareholders Agreement, ASV may exercise its right to repurchase your shares and vested options. Per mutual agreement, ASV will complete this repurchase no sooner than January 1, 2016 and no later than January 31, 2016. The purchase price for all of your common stock and 2,500 vested Optioned Shares (net of the strike price) is equal to $1,284,489.50, which ASV will pay in cash upon your surrender of the stock and option certificates or instruments, if any.

Broadly, the central dispute remaining in this matter is whether plaintiff is entitled to any portion of the ASV stock repurchase pursuant to the Uniform Spousal Support Order Attachment.

Without engaging in unnecessary detail, the record discloses a relationship between the parties post-divorce that can best be described as mutually distrustful and antagonistic, both engaging in voluminous motion practice. Relevant to the instant appeal, the parties agreed and entered a stipulation to arbitrate. In relevant part, the stipulation specifically enumerated six motions that were outstanding as of the date of the stipulation, and it further provided that the

---

[1] We could find no copy of this letter in the lower court record, but it appears that it was introduced into evidence before the arbitrator and we perceive no dispute that the copy provided on appeal is accurate and real. We remind the parties that it is unwise not to ensure that evidence about which they might care on appeal is properly included in the lower court's record.

arbitrator "shall arbitrate all of the remaining, post judgment issues in the case, except for any determinations of contempt and applicable sanctions, which are specifically reserved for the Court's consideration," although the arbitrator was empowered to make recommendations. The parties continued to file motions, ranging from parenting time issues to allegations of noncompliance with interim orders from the arbitrator to efforts to disqualify the judge. One of the motions was styled as an amended version of one of the motions that had already been submitted to arbitration pursuant to the above stipulation. The arbitrator issued his first opinion on May 5, 2016, almost two years after the parties stipulated to arbitrate.

The arbitrator's opinion[2] is not a model of clarity, although it is readily apparent that the arbitrator had a great deal with which to contend. The introductory portion enumerated the outstanding motions from the original stipulation, but noted that "the Order also required any other issues excepting those related to contempt and sanctions to be resolved by the Arbitrator as they are brought." It observed that "[p]roofs had to be reopened in 2015 to access information relative to the Defendant's job change and new income numbers for calculation purposes." In relevant part, the arbitrator determined that defendant owed plaintiff a payment of $236,160.00 on the basis of the ASV stock repurchase. Both parties apparently requested that the arbitrator correct certain alleged errors or omissions.[3] The arbitrator issued a response noting that modification of spousal support had not been made arbitrable, but what exactly should be considered compensation to defendant for purposes of calculating that support was a subject of arbitration. Relevant to the instant appeal, the arbitrator conceded that 500 of the ASV stocks would never vest and should be subtracted from the above calculations. The arbitrator deemed the only reasonable interpretation of the Uniform Spousal Support Order Attachment to be that any subsequent compensation or stock was to be considered income for support purposes, and that the ASV stock purchase necessarily had to be considered compensation, although limited only to gains realized from the stock rather than the entire buy-back price.

Plaintiff moved in the trial court to confirm the ultimate award, and defendant moved to vacate or modify portions of it. In relevant part, defendant argued that 2,500 shares' worth of repurchased ASV stock options were properly used to calculate additional child support because the Uniform Child Support Order explicitly included a percentage "of the net value of vested options," whereas the Uniform Spousal Support Order did *not* include stock options for purposes of calculating support payment. Consequently, including 19.5% of the ASV stock repurchase was an impermissible modification of the Uniform Spousal Support Order; furthermore, the arbitrator exceeded his authority by doing so because that was not part of any of the outstanding motions submitted to arbitration. Defendant also argued that the other 1,150 shares of ASV stock were personal purchases, not even arguably compensation, and the arbitrator erred by requiring him to pay 19.5% of the capital gains from his sale thereof. It appears that the arbitrator's opinion did not clearly distinguish between the two categories of ASV stock.

For the most part, the trial court did confirm the arbitration award, and to the extent it did so, those matters are not before this Court on appeal. The trial court also concluded, after holding a hearing, that:

---

[2] We again cannot find an original copy of the Arbitrator's Opinion in the lower court record.
[3] Neither request is found in the lower court record.

the Arbitrator exceeded his authority by improperly modifying the Uniform Spousal Support Orders by granting Plaintiff 19.5% of the net profits from the sale of the ASV stock options and, therefore, the Arbitrator's opinion granting plaintiff $117,073.20 is vacated. Further, and for the same reasons, the Arbitrator's Opinion that Defendant should pay Plaintiff as additional spousal support 19.5% of the capital gains from the sale of the ASV common stock in the amount of $35,971.94 should be vacated.

The trial court denied the remainder of defendant's request. However, it also remanded to the arbitrator "the issue of attorney fees requested by Plaintiff" limited "to the need of Plaintiff to be reimbursed for attorney fees pursuant to MCR 3.206(C)(2) related to the enforcement proceedings initiated by Plaintiff." Both parties attempted to claim an appeal by right, and we subsequently granted their applications for leave.

"This Court reviews de novo a circuit court's decision to enforce, vacate, or modify an arbitration award." *Cipriano v Cipriano*, 289 Mich App 361, 375; 808 NW2d 230 (2010), lv den 489 Mich 869 (2011). Under the Domestic Relations Arbitration Act (DRAAA), MCL 600.5070 *et seq.*, "parties to a domestic-relations proceeding may stipulate to submit their disputed issues to binding arbitration" pursuant to a written contract that defines, dictates, and limits the powers of the arbitrator. *Id*. at 367, 376. By default, the trial court is required to enforce the arbitrator's award. MCL 600.5079(1). However, the trial court is required to vacate the award under MCL 600.5080(1) if the trial court finds the award adverse to the best interests of the child, or relevant to the instant matter, under MCL 600.5081(2)(c) if "the arbitrator exceeded his powers." "An arbitrator exceeds his or her powers if the arbitrator acts in contravention of controlling law" or "exceed[s] the powers that the parties' agreement granted to him." *Cipriano*, 289 Mich App at 373, 377. To "exceed his powers" is essentially a longstanding shorthand for deviating from the contract or controlling law. *Washington v Washington*, 283 Mich App 667, 672; 770 NW2d 908 (2009). "In order for a court to vacate an arbitration award because of an error of law, the error must have been so substantial that, but for the error, the award would have been substantially different." *Cipriano*, 289 Mich App at 368. Any such error must be readily apparent on the face of the award without second-guessing the arbitrator's thought processes, and the arbitrator's findings of fact are immune to review altogether. *Washington*, 283 Mich App at 672.

The gravamen of the parties' dispute appears to be whether the arbitrator effectively modified the parties' Uniform Spousal Support Order by awarding plaintiff 19.5% of the profits from the sale of defendant's ASV stock, although defendant presumably also would argue[4] that the arbitrator exceeded his authority by addressing a matter not strictly contained within the six motions pending when the parties agreed to arbitrate. The latter is obviously meritless. "Arbitrators exceed their powers whenever they act beyond the material terms of the contract from which they draw their authority or in contravention of controlling law." *Miller v Miller*, 474 Mich 27, 30; 707 NW2d 341 (2005). The arbitration stipulation states that the parties agreed to arbitrate the outstanding motions, and *in a separate section*, directed the arbitrator to "arbitrate all of the remaining, post judgment issues in the case, except for any determinations of contempt and applicable sanctions." Clearly, this was intended to be relatively open-ended and to bring

_____

[4] Defendant's counsel apparently encountered technical difficulties in submitting a brief to this Court.

the entire matter to a conclusion; considering the *two years* the parties nevertheless contrived to stretch the arbitration proceedings, it defies reason to conclude that the arbitrator was prohibited from addressing later spousal support and income issues as they arose.

The former argument is apparently based on the fact that the Uniform Child Support Order Attachment includes the word "options," whereas the Uniform Spousal Support Order Attachment does not. While accurate, both attachments *do* encompass "restricted and performance shares" upon vesting. The letter from ASV describes 3000 (of which 500 will not vest) shares as "Optioned Shares (the 'Performance Based Options')." We do not understand why those would not be considered "performance shares," nor can we find any coherent argument presented anywhere in the record explaining otherwise. Furthermore, given that the shares were apparently conferred upon defendant as part of his compensation, and he only received liquid value for them upon his termination from ASV, they at least plausibly constitute some form of "deferred compensation," which is also encompassed by the Uniform Spousal Support Attachment.

Given that the review of arbitrators' decisions is highly deferential, determining whether the 2,500 ASV stocks constitute either deferred compensation or performance shares is clearly within the arbitrator's authority, and the determination itself is at least partly factual, we find it impossible to reasonably conclude that the arbitrator's decision to award plaintiff 19.5% thereof exceeded his powers.

In contrast, the other 1,150 shares were *purchased* by defendant. Plaintiff's argument is that these shares constitute "gross bonuses and/or deferred compensation" because he was only permitted to make those purchases because of his employment. We agree with defendant's argument made in the trial court that it does not constitute either a bonus or compensation merely because a condition of his employment afforded him an opportunity to make a personal investment that would have otherwise been unavailable. Defendant bought the stock with his own money, it was not granted to him as either part of a compensation package or as a consequence of meeting a performance goal. In light of the poor comprehensibility of the arbitrator's opinion, we cannot deem the arbitrator's inclusion of the profit from the 1,150 ASV shares to be an unreviewable factual finding. We therefore conclude that the arbitrator *completely* deviated from the plain language of the Uniform Spousal Support Attachment by including the profit from the 1,150 ASV shares. This departure is of such magnitude to constitute a "substantial" error that resulted in a "substantially different" outcome, *Cipriano*, 289 Mich App at 368, and it is readily apparent on the face of the award. *Washington*, 283 Mich App at 672.

Defendant argues that the trial court also erred in remanding the matter to the arbitrator to address plaintiff's request for attorney fees based on her financial need. We agree. As discussed, the arbitrator was authorized to consider all post-judgment issues. However, the arbitrator had already done so, and had in fact expressly rejected a request for attorney fees made by plaintiff, noting, among other things, that there was some argument that both parties' acrimony was responsible for the accumulation of attorney fees by both parties. Plaintiff apparently did not object to that rejection. It appears that the only arguments plaintiff made regarding attorney fees *to the arbitrator* were based on MCR 3.206(C)(2)(b), that defendant's noncompliance entitled her to the fees. Indeed, our review of the record indicates that plaintiff

made such a request at least a half-dozen times; it seems that plaintiff routinely added to her numerous motions a request that defendant be required to pay attorney fees associated with the motion, but none of them "allege[d] facts sufficient to show that [ . . . ] the party is unable to bear the expense of the action." MCR 3.206(2)(a).

Clearly, attorney fees were placed before the arbitrator. Equally clearly, at least based on the available record, attorney fees *based on need* were not, or at least they were not specifically argued. Plaintiff claims that she submitted an Arbitration Summary on July 31, 2015, that cited MCR 3.206(2)(a), but that document is not actually found anywhere in the lower court record. Defendant does provide what purports to be a copy of that document, and if accurate, it simply recites MCR 3.206(2) in its entirety and then proceeds to argue entirely that she incurred expenses because of defendant's violations and misconduct and lack of good faith, clearly constituting an argument under MCR 3.206(2)(b). As a consequence, the record establishes that defendant is correct in asserting that attorney fees *based on plaintiff's need* were only expressly raised for the first time after the trial court read from the bench its decision to reverse part of the arbitrator's award.

Plaintiff argues that attorney fees are only permitted in a divorce action where necessary to permit a party to pursue or defend the action, thus placing attorney fees based on need before the arbitrator by necessary implication. The case cited by plaintiff does say as much. *Stoudemire v Stoudemire*, 248 Mich App 325, 344; 639 NW2d 274 (2001). However, at the time *Stoudemire* was decided, MCR 3.206(C) *only* provided for attorney fees based on need. The Court Rule was amended in 2003 specifically to add a provision for attorney fees to be granted based solely on a litigant's improper behavior. See Amendments of Michigan Court Rules of 1985, 468 Mich LXXXV.[5] The statement in *Stoudemire* and any cases it cites or that cite it are no longer based on an accurate understanding of the relevant Court Rule. Furthermore, presuming the Arbitration Summary supposedly filed by plaintiff is accurate, plaintiff was actually aware of the current provisions of the Court Rule and cannot claim surprise. Because plaintiff only argued that attorney fees were appropriate based on defendant's allegedly improper behavior, attorney fees based on need were, by necessary implication, *not* argued.

Plaintiff also accurately notes that under MCL 552.12, "In every action brought . . . the court may require either party to . . . pay any sums necessary to enable the adverse party to carry on or defend the action, during its pendency." Nevertheless, as discussed, there is no indication in the record that we can find indicating that at the time the parties agreed to arbitrate, or

---

[5] Prior to the amendment, MCR 3.206(C) provided as follows:

> *(C)  Attorney Fees and Expenses*
> *(1)  A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action.*
> *(2)  A party who requests attorney fees and expenses must allege facts sufficient to show that the party is unable to bear the expense of the action, and that the other party is able to pay.*

thereafter, any outstanding request existed from plaintiff for "sums necessary to enable her to carry on the action."

Although the arbitrator's opinion was rambling, the arbitrator did explicitly consider attorney fees, and he decided against awarding them. There is no indication that the arbitrator considered plaintiff's need in doing so, but there is also no indication in the arbitrator's response to both parties' requests to correct errors and omissions that plaintiff's need was ever placed at issue. Consequently, need was raised for the first time after the trial court read its decision to vacate part of the award. The trial court's remand to the arbitrator was apparently based on the logic that the arbitrator might have reached a different conclusion about attorney fees if the "big picture" of the award as a whole was altered by the reduction of $153,045.14. While understandable, this decision suffers from the fatal flaw that attorney fees based on need were never before the arbitrator in the first place, so no decision thereon existed to be reconsidered. The trial court's remand was therefore an improper *ad hoc* submission of an entirely new issue that the parties had not agreed to arbitrate.

Consequently, the trial court's order vacating the arbitrator's award granting plaintiff 19.5% of the 1,150 shares of ASV stock is affirmed; the trial court's decision to vacate the portion of the arbitrator's award granting plaintiff 19.5% of the 2,500 shares of ASV stock is reversed; and the trial court's remand to the arbitrator of the issue of attorney fees based on need is reversed. The matter is remanded to the trial court for entry of an order consistent with this opinion. We retain jurisdiction. In Docket No. 335653, the parties shall bear their own costs, neither having prevailed in full; in Docket No. 335775, defendant, being the prevailing party, may tax costs. MCR 7.217(A).

/s/ Jane E. Markey
/s/ Joel P. Hoekstra
/s/ Amy Ronayne Krause

# Court of Appeals, State of Michigan

# ORDER

Janet Lashar Eppel v Christopher James Eppel

Docket No. 335653

LC No. 11-048048-DM

Jane E. Markey
Presiding Judge

Joel P. Hoekstra

Amy Ronayne Krause
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 28 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. The proceedings on remand are limited to these issues.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

/s/ Jane E. Markey

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

January 9, 2018
Date

Chief Clerk