*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

MICHAEL F. MOORE,

       Plaintiff-Appellee,

v

KATHLEEN R. GLYNN,

       Defendant-Appellant.

UNPUBLISHED
August 27, 2020

No. 349505
Antrim Circuit Court
LC No. 13-006629-DO

Before: SHAPIRO, P.J., and SERVITTO and LETICA, JJ.

PER CURIAM.

Defendant, Kathleen Glynn, appeals by right an order granting the motion of plaintiff, Michael Moore, to vacate an arbitration award. The trial court vacated the award on the basis that the arbitrator exceeded the scope of her authority under the parties' arbitration agreement. Because the arbitrator did not exceed the scope of her authority and the trial court erroneously ruled on the merits of the parties' settlement agreement, we reverse the trial court's decision to vacate the arbitration award and remand for the trial court to confirm the award.

## I. FACTUAL BACKGROUND

Moore filed for divorce in 2013, and following mediation, the parties reached a transcribed mediation agreement in June 2014. The mediator read an outline of a property settlement agreement, the terms of which were to be incorporated into a written settlement agreement. The agreement described in part periodic payments that Moore must make to Glynn.

In July 2014, the parties executed a settlement agreement that reflected the terms of the mediation agreement. Paragraph 4(A) of the settlement agreement provided: "In consideration for Glynn relinquishing her interest in the parties' jointly held business interests, and Moore's business interests, commencing June 1, 2014, and ending on May 31, 2019, Moore will pay Glynn periodic property settlement payments as follows . . . ." Detailed provisions followed concerning property settlement payments. The settlement agreement provided that the parties would "execute a Separate Contract (Contract) which will include and describe, in greater detail, the contractual provisions regarding these property settlement payments by Moore to Glynn the detailed terms of which will not be inconsistent with paragraph 4A above . . . ." If the parties could not agree on

-1-

the separate contract, it would be submitted to binding arbitration. A consent judgment of divorce was entered in July 2014, which provided that:

> The division of property in this matter shall be pursuant to a Confidential Settlement Agreement (Agreement) dated July 18, 2014 which is incorporated, but is not merged into nor attached to this Judgment and pursuant to a Confidential Separate Contract (Separate Contract) to be executed after entry of this Judgment.

In February 2018, the parties entered into an arbitration agreement and selected an arbitrator. The parties' arbitration agreement "conferred [the arbitrator] with jurisdiction to decide the following issues in lieu of a trial by the court: the terms, and language in the drafting of the Separate Contract provided for in Sections 4(A), 9(5), 9(7) and 9(8) of the Confidential Settlement Agreement[.]" The arbitration agreement also provided that the arbitrator would issue an award that "shall contain terms which will not be inconsistent with those reflected in the Transcript and set forth in paragraph 4A of the Confidential Settlement Agreement of July 18, 2014."

Following hearings and witness testimony, the arbitrator issued an award applying an accrual method of accounting, which provided Glynn with property payments based on when funds were earned, not when funds were paid. The arbitrator also detailed the documentation Moore was to provide Glynn regarding accounting.

Moore moved to vacate the arbitration award, arguing that the arbitrator issued an award that was inconsistent with the agreements. Moore detailed the ways that the settlement agreement and arbitration award were inconsistent, and he argued that the arbitrator should not have considered extrinsic evidence or looked beyond the four corners of the settlement agreement because its language was not ambiguous. Glynn responded that the arbitrator did not exceed her authority because the settlement agreement specifically indicated that a separate contract would detail the terms of ¶ 4(A). Glynn argued that the parties had empowered the arbitrator to supply missing terms in the settlement agreement, the parties had explicitly indicated that the settlement agreement was not complete, and the arbitrator's award merely fleshed out the settlement agreement's terms and was consistent with that agreement.

The trial court ruled that the settlement agreement "speaks for itself" and that the four corners of the settlement agreement did not provide an accounting method for the property settlement payments. It opined that the arbitrator had exceeded the scope of her authority and granted Moore's motion to vacate the arbitration award. It declined to remand the case to the arbitrator and instead closed the case.

Glynn appeals.

## II. STANDARDS OF REVIEW

We review de novo the trial court's decision whether to enforce an arbitration award. *Miller v Miller*, 474 Mich 27, 30; 707 NW2d 341 (2005). We also review de novo whether an arbitrator exceeded his or her powers. *Id*. A court's review of an arbitrator's award is very limited. *Police Officers Ass'n of Mich v Manistee Co*, 250 Mich App 339, 343; 645 NW2d 713 (2002). A reviewing court must accept the arbitrator's factual findings and decisions on the merits, and it

cannot engage in contractual interpretation because that is an issue reserved for the arbitrator. *Ann Arbor v AFSCME*, 284 Mich App 126, 144; 771 NW2d 843 (2009).

## III. ANALYSIS

Glynn argues that the trial court erred by vacating the arbitration award on the basis that the arbitrator exceeded her powers by looking outside the four corners of the settlement agreement, as the arbitration agreement expressly provided that the arbitrator would draft a separate contract to detail the settlement agreement's terms. We agree that the trial court erred.

Glynn is correct that the parties granted the arbitrator authority to fashion a separate contract, as long as that contract was not inconsistent with the settlement agreement and the June 2014 mediation transcript. We conclude that the trial court erred by engaging in contractual interpretation of the parties' settlement agreement. The arbitrator did not exceed the scope of her authority because the scope of the parties' arbitration agreement empowered the arbitrator to create a separate contract, and the contract the arbitrator created did not conflict with the parties' settlement agreement.

"Under the domestic relations arbitration act (DRAA[]), MCL 600.5070 *et seq*., parties to a domestic-relations proceeding may stipulate to submit their disputed issues to binding arbitration, pursuant to a written contract that defines, dictates, and limits the powers of the arbitrator." *Eppel v Eppel*, 322 Mich App 562, 571-572; 912 NW2d 584 (2018) (quotation marks and citation omitted). A reviewing court may vacate an arbitration award only in a few circumstances, including if the arbitrator exceeded his or her contractual powers. MCL 600.5081; *Miller*, 474 Mich at 31.

An arbitrator exceeds his or her powers when: (1) the arbitrator acts beyond the material terms of the arbitration contract or (2) the decision contravenes controlling principles of law in a way that materially prejudices the rights of the parties. *Washington v Washington*, 283 Mich App 667, 672; 770 NW2d 908 (2009). A reviewing court may not overturn an arbitrator's award "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority . . . ." *Ann Arbor*, 284 Mich App at 144 (quotation marks omitted). Unless the arbitrator "disregard[ed] the terms of his employment and the scope of his authority as expressly circumscribed in the arbitration agreement, judicial review effectively ceases." *Police Officers Ass'n*, 250 Mich App at 343 (quotation marks omitted).

In this case, the arbitration agreement "conferred [the arbitrator] with jurisdiction to decide the following issues in lieu of a trial by the court: the terms, and language in the drafting of the Separate Contract provided for in Sections 4(A), 9(5), 9(7) and 9(8) of the Confidential Settlement Agreement." The arbitration agreement provided that "[t]he sole subject matter to be determined by [the arbitrator] shall be the 'Separate Contract' required under the terms reflected in the Transcript and incorporated into the Confidential Settlement Agreement and Consent Judgment of Divorce." It also provided that "the ultimate award issued by her shall contain terms which will not be inconsistent with those reflected in the Transcript and set forth in paragraph 4A of the Confidential Settlement Agreement of July 18, 2014." Accordingly, the parties' arbitration agreement granted the arbitrator authority to draft a separate contract, as long as the terms of that

contract were not inconsistent with the June 2014 mediation transcript and ¶ 4(A) of the settlement agreement.

The trial court ruled that the arbitrator had exceeded her authority. It stated:

The four corners of the contract clearly, in this Court's view, has a plain effect to the words utilized, plain and ordinary meaning. If the four corners of the contract had meant a different accounting method by which to provide the 4% payments to Glynn, it clearly could have chosen to do so. That's been added, and I don't know how much plainer you can get than simply it's a 4% payment during that time period.

We determine that the trial court confused issues of contractual interpretation with issues of the arbitrator's authority. When a contract is unambiguous, a court should not look beyond the four corners of the contract to determine the parties' intent. *Zurich Ins Co v CCR & Co*, 226 Mich App 599, 606-607; 576 NW2d 392 (1997). However, as stated above, a reviewing court may not overturn an arbitrator's award "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority . . . ." *Ann Arbor*, 284 Mich App at 144 (quotation marks omitted). A reviewing court cannot engage in contractual interpretation. *Id*. The trial court was not tasked with deciding whether the parties' settlement agreement was ambiguous or not. That issue concerns construing or applying the settlement agreement, which the trial court may not do.

The trial court was only tasked to decide whether the arbitrator had authority to decide the parties' dispute under their arbitration agreement. The trial court erred by vacating the arbitration award on the basis of its opinion that the settlement agreement was clear and could have, but did not, provide an accounting method. The arbitrator did not exceed her authority by drafting the terms of a separate and more detailed contract, as long as the terms that the arbitrator created were not inconsistent with the settlement agreement.

Glynn argues that the trial court erred by vacating the arbitration award after determining that the parties' settlement agreement was not ambiguous, contrary to the arbitrator's determination that the settlement agreement was ambiguous. Glynn is correct. The trial court may not engage in contractual construction beyond determining whether the arbitrator acted within the scope of the parties' arbitration agreement.

When reviewing an arbitration award, a reviewing court cannot engage in contractual interpretation. *Ann Arbor*, 284 Mich App at 144. "[O]nly the arbitrator can interpret the contract." *Brucker v McKinlay Transp, Inc*, 454 Mich 8, 15; 557 NW2d 536 (1997).[1] The goal of contractual interpretation is to honor the parties' intent and to enforce the contract's plain terms. *Davis v LaFontaine Motors, Inc*, 271 Mich App 68, 73; 719 NW2d 890 (2006). A contract is ambiguous

---

[1] While a reviewing court may determine whether the arbitration clause in the parties' contract is itself ambiguous, see *Lebenbom v UBS Fin Servs, Inc*, 326 Mich App 200, 215-216; 926 NW2d 865 (2018), this is not at issue here.

when its provisions are capable of conflicting interpretations. *Farm Bureau Mut Ins Co of Mich v Nikkel*, 460 Mich 558, 566; 596 NW2d 915 (1999).

Thus, in order to determine whether the parties' underlying contract is ambiguous, a court must engage in contractual interpretation. Accordingly, to determine whether the parties' contract is ambiguous, the trial court necessarily had to interpret the underlying contract. However, the trial court is not permitted to interpret the underlying contract when reviewing an arbitration award. The reviewing court may only determine whether the parties' agreement to arbitrate is ambiguous, not whether the arbitrator's interpretation of the contract was correct. When the trial court reviewed whether the parties' contract was ambiguous, it again erroneously considered the merits of the arbitrator's decision.[2]

## IV. ALTERNATE GROUNDS

Moore argues that the trial court did not err by vacating the arbitration award because the arbitrator exceeded her authority by issuing an award that was inconsistent with the settlement agreement in several respects. The trial court did not address this issue because it vacated the arbitration award on the basis of that the arbitrator looked beyond the four corners of the parties' settlement agreement to create an accounting method. As Moore specifically raised the following arguments before the trial court, we will address them. *Riverview v Sibley Limestone*, 270 Mich App 627, 633 n 4; 716 NW2d 615 (2006).

An arbitrator exceeds his or her powers when the arbitrator acts beyond the material terms of the arbitration contract. *Washington*, 283 Mich App at 672. In this case, the parties' arbitration agreement indicated that the arbitrator would create a separate contract that would "contain terms which will not be inconsistent with those reflected in the Transcript and set forth in paragraph 4A of the Confidential Settlement Agreement of July 18, 2014." Moore's arguments rely on assertions that the award's language varied from the language in the settlement agreement. Moore's arguments fail because "not inconsistent with" does not mean that language must be identical; it means that language must not conflict.

In *Priority Health v Comm'r Office of Fin & Ins Servs*, 489 Mich 67, 74-75; 803 NW2d 132 (2011), the Michigan Supreme Court considered whether provisions in a contractual policy were "not inconsistent with" the language of the small employer group health coverage act, MCL 500.3701 *et seq*. In that case, a statute allowed an insurer to add provisions to a renewal policy that were "not inconsistent with" specific provisions enumerated in the act. *Id*. at 76. The Supreme Court rejected this Court's reasoning that the term "not inconsistent with" meant that only expressly permitted provisions could be added. *Id*. at 76. The Supreme Court held that new provisions were "not inconsistent with" the act if they could not be reconciled with the act. *Id*. at 77. The Supreme Court reasoned that, if the only provisions that a policy could add were those provisions expressly enumerated in the act, it would render the phrase "not inconsistent with" surplusage. *Id*. at 77-78.

---

[2] Given our analysis, we need not address Glynn's remaining arguments.

We reject Moore's arguments that the arbitrator's award is "not consistent with" the settlement agreement because it uses different language. The settlement agreement explicitly provided that the "parties will execute a Separate Contract (Contract) which will include and describe, in greater detail, the contractual provisions regarding these property settlement payments . . . ." The arbitration agreement provided that the arbitrator was to create a separate contract with these additional terms. If the arbitrator was only permitted to use language and terms in the separate contract that were expressly enumerated in the separation agreement, the arbitrator could not add any terms at all. Following Moore's argument, there would be no need for a separate contract because it could add nothing to the settlement agreement. Therefore, accepting Moore's argument would render ¶ 4(A)(6) of the separation agreement surplusage. On this basis, we also reject Moore's various arguments that the arbitration award was not consistent with the settlement agreement because it added language and definitions that the settlement agreement did not use.

Considering Moore's individual arguments, Moore first argues that the arbitrator's separate contract was inconsistent with the separation agreement because she replaced the term "amounts paid" with amounts accrued or earned. Both the mediation transcript and separation agreement contain the phrase "all amounts paid to." Synonyms of the word "paid," when paid is considered in the context of something producing revenue, may include the words "returned" and "yielded," and are related to the words "brought in" and "netted." Merriam-Webster's Online Thesaurus, *Paid* <https://www.merriam-webster.com/thesaurus/paid> (accessed August 24, 2020). The arbitrator determined that the payments included amounts accrued, payable to Moore, or earned by Moore during the time period regardless of when Moore was actually paid or when the amounts were actually received. The arbitrator did not exceed the scope of her authority by using synonyms for the word paid, because the arbitrator's language can be reconciled with the settlement agreement and mediation transcript.

Second, Moore argues that the arbitrator's award was inconsistent with the settlement agreement because the arbitrator replaced a definite time frame for the payments with an indefinite time frame. Moore asserts that the separate contract provided that he would provide Glynn with payments only between June 1, 2014 and May 31, 2019. This argument lacks merit because the settlement agreement is ambiguous about what the time frame was attached to, and the arbitrator's award was consistent with the mediation transcript.

The mediation transcript stated, "In consideration for [Glynn's] relinquishment of her interests in jointly held business interests and in the business interests of [Moore] commencing June 1, 2014 and ending on May 31, 2019, [Moore] will pay to [Glynn] periodic property settlement payments as follows . . . ." The settlement agreement provided that, "[i]n consideration for Glynn relinquishing her interest in the parties' jointly held business interests, and Moore's business interests, commencing June 1, 2014, and ending on May 31, 2019, Moore will pay Glynn periodic property settlement payments as follows . . . ."

The sheer number of clauses in the contractual phrase in the settlement agreement render it unclear whether the dependent clause "commencing June 1, 2014, and ending on May 31, 2019" attaches to the preceding phrase "[i]n consideration for Glynn relinquishing her interest in the parties' jointly held business interests, and Moore's business interests," or the subsequent phrase "Moore will pay Glynn periodic property settlement payments as follows[.]" However, the mediator's statement is much clearer regarding to which provision the time frame attaches.

-6-

Reading the mediator's time frame in its grammatical context, the time frame is an introductory phrase concerning Glynn's relinquishment of jointly held business interests: The provision provided that Glynn would relinquish her interests from June 1, 2014 to May 31, 2019, and in return, Moore would pay Glynn periodic settlement payments. The arbitrator found that Glynn was entitled to payments on the basis of when income was earned rather than when it was actually received. The settlement agreement was inconclusive and the award was consistent with the transcript. Because the arbitrator's award can be reconciled with the settlement agreement and mediation transcript, the arbitrator's award was not inconsistent with those documents and the arbitrator did not exceed the scope of her authority.

Third, Moore argues that the arbitrator's award was inconsistent with the settlement agreement because she adopted the opinion of an expert regarding industry accounting. The record belies this argument because the arbitration agreement expressly provided that the parties would exchange witness lists and present witnesses.

Fourth, Moore argues that the arbitrator's award was inconsistent with a payment exclusion in the settlement agreement. The settlement agreement excluded from the settlement payments:

> Any future production company entities formed by Moore after the execution of this Agreement pursuant to a contract with a funding entity (such as a studio or investor) which is held by Moore pursuant to a contract as has been the usual past course of business.

The mediation transcript provided that the payments "shall not include any production company entities formed by [Moore] pursuant to a contract with a funding entity, that is [a] studio or investor, which is held by [Moore] pursuant to the contract as has been the usual course of business in the past."

The arbitrator relevantly defined "excluded amounts" as including:

> [A]ny funding received from a studio or investor by a production company formed by Moore following the execution of the Settlement Agreement, provided such funding is received pursuant to a written agreement entered into between Moore and such studio or investor in the ordinary course of business consistent with Moore's usual past course of business, provided further that such funding does not in any manner include any type of renumeration to Moore, and Moore Representative on/for Moore's account, benefit or behalf, and /or [sic] any Moore entity. To the extent that any funding includes compensation, whether cash or non-cash, to Moore, and Moore Representative on/for Moore's account, benefit or behalf, and/or any Moore Entity, such sum shall not be considered an excluded amount.

The arbitrator defined "Moore Entit[ies]" as companies, corporations, and other enterprises in which Moore had a direct or indirect interest, including Dog Eat Dog Films, and any successor or subsidiary of those enterprises.

The mediation transcript and settlement agreement both provided that the exclusion applied to *future* production company entities that Moore formed, and the arbitrator's definition of "Moore

Entit[ies]" was limited to entities in existence when the settlement agreement was signed. The separate contract, settlement agreement, and mediation transcript each indicate that this exception applies to the same class of entities—entities that Moore created after the settlement agreement was signed. The arbitrator also excluded from this exception amounts paid directly to Moore or paid on his behalf to his representatives or the companies. The exception applied only to production company entities—not to Moore personally. Thus, as the arbitrator's award can be reconciled with the settlement agreement and mediation transcript, it was not inconsistent and the arbitrator did not exceed the scope of her authority.

Finally, Moore argues that the arbitrator's backup documents provision was not consistent with the settlement agreement. The settlement agreement provided that Moore would provide to Glynn available documentation during each payment, and "[i]n the event the parties cannot agree upon which documents are reasonable and necessary under this provision, they shall submit all production disputes to the Entertainment Attorney Arbitrator (described below) for binding decision within ninety days." The award detailed exactly what documents Glynn was entitled to under the parties' agreement. Because the parties' settlement agreement expressly provided that the arbitrator would resolve their disputes about what documentation was necessary, Moore's argument that the arbitrator exceeded the scope of the parties' arbitration agreement by creating a backup document provision lacks merit.

## V. CONCLUSION

The trial court erred by determining that the arbitrator exceeded the scope of her authority by looking beyond the four corners of the parties' settlement agreement, and we reject Moore's arguments that the arbitrator exceeded the scope of her authority. The trial court erroneously determined that the parties' settlement agreement was not ambiguous, as it only had the power to determine only whether the arbitrator acted within the scope of her authority and did not have power to interpret the parties' contract. Because the arbitrator did not exceed the scope of her authority, the trial court's review should have ended and the court should have confirmed the arbitration award.

Reversed and remanded for confirmation of the arbitration award.

We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Anica Letica

-8-