*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MAI LAM,

Plaintiff-Appellee,

v

SULLIVAN DO,

Defendant-Appellant.

UNPUBLISHED
November 22, 2022

No. 354174
Wayne Circuit Court
Family Division
LC No. 19-100793-DM

Before: GLEICHER, C.J., and SERVITTO and YATES, JJ.

PER CURIAM.

Following binding domestic relations arbitration, Sullivan Do was displeased with the results. He cited errors in the arbitrator's calculation of Mai Lam's income for child support purposes and sought credit in the property division for supporting Lam in her postdoctoral work. The arbitrator rejected these points and a final divorce decree entered. We affirm in part, but remand for the recalculation of child support based on Lam's previous three years of income pursuant to the 2017 Michigan Child Support Formula (MCSF) 2.02(B).

## I. BACKGROUND

Mai Lam and Sullivan Do were married in 2006, five months after Lam earned a Ph.D. in biomedical engineering. Do had earned a bachelor's degree in engineering and was working in his field at that time, earning $91,000 a year. From 2006 to 2008, Lam worked in a Michigan research laboratory, earning only $12 an hour. The couple then moved to California so Lam could accept a position as a postdoctoral scholar at Stanford University. Lam earned $48,000 annually at this post. Do initially took a pay cut to work at DynaSystems in California, but later was hired in sales for Harman International, earning nearly $139,000 after commissions in his first year. In 2013, Lam and Do returned to Michigan. 2013 also marked the birth of Lam's and Do's only child—ED. Lam accepted a position as a professor at Wayne State University. Her salary was disputed in these proceedings. Do took a demotion and pay cut but was able to continue his employment with Harman. In 2019, he earned $121,782.

The parties separated in 2018, and Lam filed for divorce in January 2019. Issues of property division, parenting time, and child support were submitted to arbitration. The main points of contention were Lam's annual salary as a Wayne State professor and whether Do should be compensated for supporting Lam while she earned a higher degree as contemplated by *Postema v Postema*, 189 Mich App 89; 471 NW2d 912 (1991). At Wayne State, Lam teaches classes during the fall and winter semesters, earning $106,127. The university requires Lam to conduct research fulltime during the summer. The university does not provide a salary for that time, however. Rather, Lam is required to secure grants. Lam did not secure her first grant until 2019, totaling $34,996. This increased Lam's 2019 income to $143,022. Do contended that Lam's income for child support purposes should be calculated based on the post-grant figure. The arbitrator disagreed. Using Lam's pre-grant 2019 income, the arbitrator determined that the parties' child support obligations essentially cancelled each other out.

Do contended that Lam's five-year stint as a postdoctoral scholar was a continuation of her education. During those five years, he asserted, Lam could have taken a private sector job earning substantially more. Instead Do left his life in Michigan and gave up his own career aspirations to follow Lam to California. Lam noted that although classified as a "scholar," she earned no degree or certification for her work. Rather, Lam conducted research and published papers, which helped further her career. The arbitrator did not agree with Do's characterization of Lam's position and declined to adjust the property division or to impute income to Lam during that time.

Ultimately, the circuit court adopted the arbitration award and entered a lengthy judgment of divorce. Do appeals.

## II. ANALYSIS

Do preserved his challenges to the arbitration award by raising them in a motion to correct errors and omissions as contemplated by MCR 3.602(K)(1). We review de novo a circuit court's decision to enforce an arbitration award. *Eppel v Eppel*, 322 Mich App 562, 571; 912 NW2d 584 (2018). Our review is "extremely limited." *Washington v Washington*, 283 Mich App 667, 671; 770 NW2d 908 (2009). We may not review the arbitrator's factual findings or the decision on the merits. *Eppel*, 322 Mich App at 572.

MCL 600.5081(2) of the domestic relations arbitration act (DRAA), MCL 600.5070 *et seq.*, "provide[s] four very limited circumstances under which a reviewing court may vacate a domestic relations award." *Washington*, 283 Mich App at 671. Relevant here, MCL 600.5081(2) provides that a circuit court "shall vacate" an arbitration award if "(c) [t]he arbitrator exceeded his or her powers," or "(d) [t]he arbitrator . . . refused to hear evidence material to the controversy, or otherwise conducted the hearing to prejudice substantially a party's rights." An arbitrator exceeds his or her powers if he or she "(1) act[s] beyond the material terms of the arbitration agreement or (2) act[s] contrary to controlling law." *Washington*, 283 Mich App at 672. A court may vacate or modify an arbitration award if the arbitrator contravened controlling law in a manner that was "so substantial that, but for the error, the award would have been substantially different." *Eppel*, 322 Mich App at 572 (quotation marks and citation omitted). However, that error "must be readily apparent on the face of the award without second-guessing the arbitrator's thought processes." *Id*.

The arbitrator did not exceed his powers, improperly refuse to hear material evidence, or conduct the hearing in a way that substantially prejudiced Do as it relates to the consideration of Lam's postdoctoral work at Stanford University. Pursuant to *Postema*, 189 Mich App at 94, "fairness dictates that a spouse who did not earn an advanced degree be compensated whenever the advanced degree is the end product of a concerted family effort involving mutual sacrifice and effort by both spouses." (Emphases omitted.) "[I]t is not the existence of an advanced degree itself that gives rise to an equitable claim for compensation, but rather the fact of the degree being the end product of the mutual sacrifice, effort, and contribution of both parties as part of a larger, long-range plan intended to benefit the family as a whole." *Id*. at 95. "[T]he attainment of an advanced degree is a prolonged undertaking involving considerable expenditure of time, effort, and money, as well as other sacrifices." *Id*. The nonstudent spouse makes these sacrifices because he or she expects to "shar[e] in the fruits of the degree" in the end. *Id*. When divorce interferes with this plan, equity is invoked. *Id*.

The arbitrator acknowledged and applied these principles, although not to Do's liking. After hearing the testimony and reviewing the evidence, the arbitrator found that Lam's position at Stanford was "a job . . . which furthered her career," and was not "additional training and/or continued education" subject to division under *Postema*. We may not second-guess that factual conclusion. Do complains that the arbitrator did not consider a material piece of evidence—Lam's offer letter from Stanford. First, the arbitrator was not required to mention every piece of evidence presented and considered in writing the arbitration award. See *Belen v Allstate Ins Co*, 173 Mich App 641, 645-646; 434 NW2d 203 (1988) (where there was no dispute that a document was "introduced and received into evidence," "[t]he degree of consideration given this evidence is . . . not a matter for appellate review"). Moreover, Do mischaracterizes the offer by focusing on two sentences and ignoring the remaining two pages of content. Although the offer letter indicates that "Postdoctoral Scholars are considered students in advanced training" and "are registered according to University guidelines," the very next sentence clarifies that this is done to give them "access to certain University privileges." The remainder of the letter focuses on salary, benefits, and tax consequences—matters pertinent to a job and not an educational pursuit.

However, we agree with Do that the arbitrator acted in contravention of controlling law in calculating the parties' salaries for the purpose of determining child support obligations. "A trial court must presumptively follow the MCSF . . . when determining the child support obligation of parents." *Teran v Rittley*, 313 Mich App 197, 214; 882 NW2d 181 (2015). When Lam filed the divorce complaint and during the arbitration proceedings, the 2017 MCSF was in effect. 2017 MCSF 2.202(B) provides that "[w]here income varies considerably year-to-year due to the nature of the parent's work, use three years' information to determine that parent's income."[1] Lam presented evidence regarding her annual salary for teaching in the fall and winter semesters. Lam explained that she also is required to conduct research fulltime in the summers, but will only be compensated for that work if she secures a grant. And Lam secured a grant for approximately $35,000 in 2019. Lam's "income varies considerably year-to-year" depending on her ability to

---

[1] This provision remains the same in 2021 MCSF 2.02(B).

secure a grant. Accordingly, the arbitrator was required to consider three years of information in calculating Lam's income.

However, Do also contends that additional income should be imputed to Lam for her unpaid summers because she "has an unexercised ability to earn." Do implies that Lam could earn more if she accepted a private sector job with year-round work and pay. This is not what the MCSF contemplates. 2017 MCSF 2.01(G) permits the factfinder to impute income to a parent who "is voluntarily unemployed or underemployed, or has an unexercised ability to earn." Lam is not voluntarily unemployed or underemployed and does not have an unexercised ability to earn. She is gainfully employed as a professor. Many teachers and professors are in the classroom for approximately three-quarters of the year. In their "off" months, most teachers prepare for the next year's classes without compensation. Professors similarly prepare without pay. But professors are also expected to research and publish to support the reputation of their institution without compensation from their employers. Failure to do so means the professor will not gain tenure or could be terminated. This time away from the classroom simply is not a period of voluntary unemployment.

We affirm in part, but remand for recalculation of the parties' child support obligations. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Deborah A. Servitto
/s/ Christopher P. Yates

-4-