*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STUART BRIAN CARLIN,

        Plaintiff-Appellee,

v

SARAH FINK CARLIN,

        Defendant-Appellant.

UNPUBLISHED
September 19, 2024

No. 366649
Oakland Circuit Court
LC No. 2021-507469-DM

Before: LETICA, P.J., and GARRETT and FEENEY, JJ.

PER CURIAM.

Plaintiff, Stuart Brian Carlin, filed for divorce from defendant, Sarah Fink Carlin, after nearly ten years of marriage. The parties submitted most of the issues related to their divorce to binding arbitration, but they agreed to share joint legal and physical custody of their three minor children. In the trial court, Sarah challenged the amount of child support the arbitrator awarded and also argued that the arbitrator legally erred by requiring her to pay her own attorney fees. The trial court agreed, in part, with Sarah's claim that Stuart should pay supplemental child support, but denied her claim that Stuart should be responsible for the payment of her attorney fees. Because we find no error in the trial court's rulings, we affirm the judgment of divorce.

## I. FACTS AND PROCEEDINGS

Stuart and Sarah married on October 1, 2011 after signing a prenuptial agreement that reserved to themselves certain property and any increase in value of that property. The couple had three children between 2013 and 2016. The parties began a divorce action in April 2019, but ultimately dismissed the case. Then, Stuart filed a complaint for divorce in June 2021, and Sarah filed a counterclaim for divorce. From the outset, the divorce litigation was contentious, but the parties ultimately agreed to share joint legal and physical custody of their children and to split parenting time equally. The parties also agreed to submit other issues related to their divorce to binding arbitration.

A retired judge conducted the parties' arbitration and conducted hearings on August 17, 2022, and November 17, 2022. After issuing his arbitration award, the arbitrator subsequently made some modifications and corrections to the award as requested by the parties, and issued a

final arbitration award on April 7, 2023. Stuart moved the trial court to confirm the award, but Sarah challenged the award on various grounds. Ultimately, the trial court entered a judgment of divorce on June 7, 2023. Sarah now appeals and argues that the trial court should not have confirmed the arbitrator's calculation of child support and payment of attorney fees.

## II. STANDARDS OF REVIEW AND APPLICABLE LAW

Issues involving the interpretation of Michigan's domestic relations arbitration act (DRAA), MCL 600.5070 *et seq*., are reviewed de novo. *Miller v Miller*, 474 Mich 27, 30; 707 NW2d 341 (2005). We also review de novo a trial court's decision to deny a motion to vacate or modify an arbitration award. *Washington v Washington*, 283 Mich App 667, 671; 770 NW2d 908 (2009). However, judicial review of domestic relation arbitration awards is "extremely limited." *Id*. When parties agree to binding arbitration, courts must usually enforce the award. MCL 600.5079(1). As this Court explained in *Krist v Krist*, 246 Mich App 59, 66-67; 631 NW2d 53 (2001):

> Pursuant to MCR 3.602, parties are conclusively bound by a binding arbitrator's decision absent a showing [1] that the award was procured by duress or fraud, [2] that the arbitrator or another is guilty of corruption or misconduct that prejudiced the party's rights, [3] that the arbitrator exceeded his powers, or [4] that the arbitrator refused to hear material evidence, refused to postpone the hearing on a showing of sufficient cause, or conducted the hearing in a manner that substantially prejudiced a party's rights.

Courts may not review an arbitrator's findings of fact, and legal errors must be apparent on the face of the award. *Washington*, 283 Mich App at 672. Further, a court may only grant relief if, "but for the error, the award would have been substantially different." *Id.* (quotation marks and citation omitted).

## III. DISCUSSION

## A. CHILD SUPPORT

Stuart and Sarah agreed to binding arbitration for most issues related to their divorce, including the amount of child support Stuart would pay for Sarah's care of the children. As discussed, the parties agreed to share legal custody of their three minor children, and they also agreed to equally share physical custody of the children. Accordingly, Sarah and Stuart agreed to each have physical custody the children 50% of the time. The arbitrator applied the Michigan Child Support Formula (MCSF) to calculate the parties' child support obligations, and awarded Sarah $2,522 a month in child support.

Following the arbitration award, Sarah moved for a modification of the amount of child support awarded under MCR 3.602(K)(1). The Domestic Relations Arbitration Act contemplates that child support is a matter that can be decided by arbitration, "subject to the restriction and requirements in other law and court rule as provided in this act." MCL 600.5071(c). The amount of child support is to be "determined by application of the child support formula developed by the state friend of the court bureau . . . ." MCL 552.605(2). Reading the statutes together, although

child support can be decided by arbitration, the determination of child support must be based on the MCSF.

Importantly, Sarah does not argue that the arbitrator improperly refused to hear material evidence or conducted a hearing in a way that prejudiced her. MCL 600.5081(2). Rather, her claim is that the arbitrator made a legal error in calculating child support. Although an arbitrator exceeds his or her powers when acting contrary to law, *Washington*, 283 Mich App at 672, Sarah's argument does not present a legal error, but an alleged factual one.

The record reflects that the arbitrator ruled, as an issue of fact, that the parties agreed that Stuart's annual income was $450,000 a year for purposes of calculating child support. When Sarah moved to modify or vacate the arbitration award, Stuart responded by quoting from Sarah's post-arbitration brief in which she asked the arbitrator to rule that Stuart's annual income for child support purposes should be $450,000. Although Sarah does not assert that Stuart's quotation from her arbitration brief is inaccurate, she maintains that Stuart often made much more than $450,000 because of bonuses and loans from his own business.

Again, the arbitrator's factual determinations are not subject to judicial review. *Washington*, 283 Mich App at 672. We further note that Sarah offers no argument about the amount or source of any bonuses Stuart received in addition to his income of $450,000. And, although Sarah claims that Stuart took loans from his business that the arbitrator should have calculated as redirected income under 2021 MCSF 2.01(E)(4)(c)(*i*), the arbitrator's decision not to include business loans in Stuart's income was ultimately a finding of fact and apparently based, in part, on Sarah's assertion that $450,000 was the correct amount of Stuart's income.

There is no transcript of the testimony from the arbitration hearings available to this Court, and the business records and other documents presented to the arbitrator as exhibits are also not part of the lower court record. Sarah offers no analysis of how much Stuart's business loans should add to his income for 2021, nor how the loans would impact Stuart's monthly child support payment. Further, although Sarah disclosed in trial court documents Stuart's W-2 income amounts and his adjusted gross income amounts from 2017 to 2021, Stuart's W-2 income in 2021 was $457,866 and, by her own assertion, Stuart's adjusted gross income for 2021 was $415,000. This comports with the trial court's decision, and the parties' apparent agreement, that Stuart's income should be set at $450,000.

As discussed, this Court will only grant relief if, but for an obvious error, the award would have been substantially different, and Sarah has made no such showing on appeal. *Washington*, 283 Mich App at 672. No evidence in the record refutes that the parties agreed that the arbitrator should base child support on Stuart's income of $450,000 a year and we decline to further review the arbitrator's finding of fact. *Id*. Moreover, there is no error apparent on the face of the award, so the arbitrator's decision on the merits is not subject to judicial review. *Eppel v Eppel*, 322 Mich App 562, 571; 912 NW2d 584 (2018).

Sarah also challenged the arbitrator's determination of Stuart's income because he failed to account for the value of a leased vehicle Stuart received from his business. The arbitrator specifically ruled that the parties presented no evidence of the value of any car lease Stuart received

through his business. Again, we will not interfere with the findings of the arbitrator when the parties agreed to binding arbitration on all issues relevant to the award of child support.

We further observe that the trial court agreed with Sarah's argument that she should receive some supplemental child support because of Stuart's high income. Under 2021 MCSF 3.02(B)(4), "when a family's net income greatly exceeds the highest income level, the court may exercise discretion as provided in §3.02(E)." As stated in 2021 MCSF 3.02(E):

> (1) The court should exercise discretion when a family's income used to calculate support greatly exceeds the highest "Income Amount" in the General Care Support Tables found in the current supplement to this manual.
>
> (2) When exercising discretion and trying to arrive at an appropriate result in an extremely high-income case, provided the result meets each child's needs, the court may calculate the child support amounts by using the "Base Support" from the appropriate General Care Support Table and other marginal percentages, or choose to fashion another outcome that financially benefits the children and protects each child's interests in the inherent obligation each parent owes to the child.

The trial court ruled as follows regarding its award of additional child support to Sarah:

> As additional child support, Plaintiff will pay directly to Defendant 6.5% of his annual Total Gross Earned Income greater than $450,000 from the previous year as additional child support. When there are two minor children remaining, the percentage shall reduce to 5.5%, and when there is one minor child remaining the percentage shall reduce to 3.5%.

The plain language of 2021 MCSF 3.02(B)(4) states that the award of supplemental child support is within the court's discretion. "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Keinz v Keinz*, 290 Mich App 137, 141; 799 NW2d 576 (2010). Although Sarah wanted more monthly child support, in light of the parties' debts and other ongoing financial obligations related to the divorce as well as their 50-50 custody arrangement, we do not view the trial court's ruling that Stuart pay a percentage of any income over $450,000 as outside the range of principled outcomes.

## B. ATTORNEY FEES

Sarah argues that the trial court erred by confirming the arbitrator's decision that she should pay her own attorney fees. We disagree.

At the time of arbitration, Sarah's attorney and professional fees were $338,413 and Stuart's were $244,154. Notwithstanding the terms of the prenuptial agreement, the arbitrator decided to divide the marital estate—valued at $1,077,163—in half. Because Stuart's assets held more value, the arbitrator stated that, to comply with his property division, Stuart had to pay Sarah "$361,072 to equalize the value of the property awarded." The arbitration award addressed the parties' attorney fees as follows:

-4-

The arbitrator determines that each party is responsible to pay their own attorney and professional fees. The arbitrator's decision to require each party to pay their own fees is based on the following facts: 1.) the marital estate would be divided equally (after adding Stuart's pre-marital contribution of his home equity to the estate); 2.) the testimony established that Sarah's prior counsel engaged in a strategy which led to a large amount of fees, and 3.) that both parties were awarded sufficient assets and spousal support to pay their fees.

In the divorce judgment, the trial court confirmed the arbitration award and explained the parties' obligations as follows:

Except as otherwise described above, each party shall be solely responsible for the payment of his or her own respective remaining outstanding balances owed for attorney fees, expert fees, costs, and expenses incurred in this divorce proceeding, and neither party shall have any further obligation to any attorney for the other party that arose before the date of this Judgment.

Attorney fees are generally not recoverable as of right in a divorce action, but they are authorized by both statute and court rule, where necessary to allow the party to carry on or defend the action. MCL 552.13; MCR 3.206(D); *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). Attorney fees may also be awarded under a "common-law exception to the American rule that an award of legal fees is authorized where the party requesting payment of the fees has been forced to incur them as a result of the other party's unreasonable conduct in the course of the litigation." *Id.* (quotation marks and citation omitted).

In this case, the parties placed the issue of attorney fees before the arbitrator. Further, contrary to Sarah's assertion in the trial court, the arbitrator stated that no additional hearings on the issue of attorney fees were necessary because the parties presented evidence on the issue during the arbitration.

Sarah argues that the arbitration award contains a legal error on its face because it contemplates that Sarah should use her spousal support to pay for her attorney fees. "It is well established that a party should not be required to invade assets to satisfy attorney fees when the party is relying on the same assets for support." *Gates v Gates*, 256 Mich App 420, 438; 664 NW2d 231 (2003). However, contrary to Sarah's assertion, the arbitration award does not state that Sarah should use her spousal support to pay for attorney fees, but that, because she was awarded spousal support, she can use assets awarded in the divorce judgment to pay her attorney fees. Because Sarah had imputed income and would receive monthly support payments from Stuart, she would not need to use her part of the marital estate to support herself.

As discussed, the arbitrator awarded each party half of the marital estate and ordered Stuart to pay Sarah $361,072 as a liquid share of the assets. It is undisputed that, in order to pay Sarah, Stuart needed to take out substantial loans and he also remained liable for his own attorney fees. Again, however, the award provided for Stuart to pay Sarah monthly spousal support, so she would not need to rely on her portion of the marital estate for her own support. Rather, Sarah could use her a portion of the marital estate to pay her attorney fees because she had other sources of income to support herself.

Affirmed.

/s/ Anica Letica
/s/ Kristina Robinson Garrett
/s/ Kathleen A. Feeney